Herbert RESNIK, Plaintiff–Appellant,

v.

Jerome SWARTZ, Harvey P. Mallement, Raymond R. Martino, George Bugliarello, Charles B. Wang, Tomo Razmilovic, Leo A. Guthart, James Simons and Symbol Technologies, Inc., Defendants–Appellees.

Docket No. 01–7140.

United States Court of Appeals, Second Circuit.

Argued: March 8, 2002.

Decided: Sept. 6, 2002.

148

A. Arnold Gershon, New York, NY, (Irving Bizar, Ballon Stoll Bader & Nadler, P.C., of counsel), for Plaintiff–Appellant.

Eric J. Lobenfeld, New York, NY, (Clifford Chance Rogers & Wells LLP on the brief), for Defendants–Appellees.

Before CALABRESI, CABRANES, Circuit Judges, and AMON, District Judge.*

* Hon. Carol Bagley Amon, United States District Court for the Eastern District of New York, sitting by designation.

AMON, District Judge.

Plaintiff-appellant Herbert Resnik appeals from a final judgment of the United States District Court for the Southern District of New York (McKenna, *J.*) granting defendants-appellees' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Resnik, a shareholder of defendant Symbol Technologies, Inc. ("Symbol"), brought this action against Symbol and its directors, asserting claims under section 14(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78n(a), and Rule 14a–9 promulgated thereunder, 17 C.F.R. § 240.14a–9. Resnik alleged that Symbol's proxy statement of March 15, 2000 ("the proxy statement") was materially misleading because it did not disclose the grant-date value of stock options proposed to be awarded to Symbol's non-employee directors. The district court granted defendants' motion to dismiss, concluding that defendants were not obligated to disclose the grant-date value of the options. For the reasons set forth below, we affirm.

## I. BACKGROUND

Symbol is a Delaware corporation whose stock is traded on the New York Stock Exchange. Individual defendants other than James Simons were Symbol's directors at all relevant times, whereas James Simons was elected to Symbol's board of directors on May 8, 2000. Appellant Herbert Resnik was a Symbol shareholder throughout the time period relevant to this action.

On February 14, 2000, Symbol's board of directors adopted, subject to shareholder approval, the 2000 Directors' Stock Option Plan for non-employee directors ("the Plan"), awarding each non-employee director an option to purchase 50,000 shares of Symbol common stock. Under the terms of the Plan, each current non-employee director would have the right to exercise his options at the higher of two prices, Symbol stock's closing price on February 14, 2000 and Symbol stock's closing price on the date of shareholder approval of the Plan. The Plan further provided that any subsequently elected non-employee director would be granted the options on the date when he or she became a Symbol director and would have the right to exercise them at Symbol stock's closing price on the date of the grant. The options granted to each non-employee director would become exercisable over a four-year period, with an additional twenty-five percent of the options becoming exercisable on each of the first four anniversaries of the grant date. The Plan also imposed substantial restrictions on option transfers, required that the grantees serve as non-employee directors continuously between the grant date and the exercise date, and specified a ten-year life span for the awarded options.

On March 15, 2000, Symbol issued a proxy statement, soliciting shareholders' proxies to vote at Symbol's annual shareholder meeting on May 8, 2000. Among the items proposed for shareholders' consideration were election of directors and approval of the Plan. The proxy statement summarized the key terms of the Plan in a section entitled "Management Remuneration and Transactions" and was accompanied by an Annex containing the full terms of the Plan. The "Management Remuneration and Transactions" section of the proxy statement also stated that non-employee directors received an annual retainer of $15,000 and a fee of $2,500 for each board of directors or committee meeting they attended. Additionally, the proxy statement made detailed disclosures about compensation of Symbol's executive officers and contained a table summarizing quanti-

tative information about stock options granted to the five most highly paid executives, including the potential realizable value of options granted to each executive. A footnote to the table stated:

> The actual value, if any, an executive will realize will depend on the excess of the market price over the exercise price on the date the option is actually exercised. The value actually realized by an executive or any shareholder may not be at or near the values estimated in this table.

At the annual meeting held on May 8, 2000, Symbol's shareholders elected the nominated directors and approved the Plan.

On July 19, 2000, appellant commenced the present action against Symbol and its directors, asserting claims under section 14(a) of the Exchange Act and Rule 14a–9 promulgated thereunder. Appellant alleged that the proxy statement was materially misleading because it did not disclose the grant-date present value of the options awarded pursuant to the Plan under the option pricing model developed by Fischer Black and Myron Scholes ("the Black–Scholes model").[1] According to the complaint, the Black–Scholes model estimates the grantor's cost of granting an option, commonly referred to as the Black–Scholes value of the option. The calculation is based on six input variables: the exercise price of the option, the market price of the underlying stock, the volatility of the underlying stock, the expiration date of the option, the risk-free rate of interest, and the dividend rate on the underlying stock.

Appellant alleges that the Black–Scholes value of the options granted to each non-employee director of Symbol on February 14, 2000 was $2,868,000. Appellant claims that the omission of this calculation from the proxy statement violated the Securities and Exchange Commission's ("the SEC" or "the Commission") rules on mandatory disclosure of management compensation in a proxy statement and rendered misleading the proxy statement's assertions about compensation received by non-employee directors. Appellant also claims that, in the absence of information about the Black–Scholes value of the options granted under the Plan, the quoted footnote about actual realizable value of options held by Symbol's senior executives was misleading because it conveyed the false impression that options granted under the Plan had no value until the date of their exercise.

The district court dismissed appellant's complaint, concluding that defendants had no duty to disclose the Black–Scholes value of the options proposed to be granted under the Plan. Appellant then filed this appeal.

## II. DISCUSSION

We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim upon which relief can be granted. *Strougo v. Bassini,* 282 F.3d 162, 167 (2d Cir.2002). In ruling on a motion to dismiss, a court must construe all well-pleaded factual allegations in the complaint in plaintiff's favor and may dismiss the complaint only if "it appears be-

---

**1.** The complaint also suggests a broader claim that is not limited to any specific grant-date valuation method but is based more generally on defendants' failure to disclose the Plan options' grant-date value. Because the parties' arguments have focused specifically on the Black–Scholes model, we, too, will dis-cuss primarily defendants' omission of the Black–Scholes value of the Plan options. We note, however, that our reasoning and conclusions would apply equally to a claim of failure to disclose the grant-date present value under any grant-date valuation method.

yond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999). Employing this standard here, we conclude that the complaint was properly dismissed.

■ Appellant asserts claims under section 14(a) of the Exchange Act and Rule 14a–9 promulgated thereunder. Section 14(a) makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). Rule 14a–9, in turn, prohibits proxy solicitation "by means of any proxy statement ... containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a–9(a). In the context of a proxy statement, a fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1090, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *see also Minzer v. Keegan*, 218 F.3d 144, 149 (2d Cir.2000) (citing *TSC Industries*, 426 U.S. at 449, 96 S.Ct. 2126).

■ Thus, omission of information from a proxy statement will violate these provisions if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading. Here, appellant contends that de-fendants are liable under both theories of corporate malfeasance.

■ Item 8 of Schedule 14A, 17 C.F.R. 240.14a–101, provides that, when proxies are solicited for an election of directors or for certain actions related to executive and director compensation, the proxy statement must include information specified in Item 402 of Regulation S–K, which, in turn, sets forth disclosure requirements with respect to various categories of executive and director compensation, including salaries, bonuses, stock option grants, and others. *See* 17 C.F.R. § 229.402. Appellant argues that, by omitting the Black–Scholes value of the options granted under the Plan, Symbol's proxy statement failed to comply with subsection (g) of Item 402, which describes mandatory disclosures about director compensation as follows:

(g) Compensation of Directors—

(1) Standard arrangements. Describe any standard arrangements, stating amounts, pursuant to which directors of the registrant are compensated for any services provided as a director, including any additional amounts payable for committee participation or special assignments.

(2) Other arrangements. Describe any other arrangements pursuant to which any director of the registrant was compensated during the registrant's last completed fiscal year for any service provided as a director, stating the amount paid and the name of the director.

17 C.F.R. § 229.402(g).

■ The plain language of Regulation S–K, however, fails to support appellant's contention. In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue. *New York Currency Research Corp. v. Commodity Fu-*

*tures Trading Comm'n,* 180 F.3d 83, 92 (2d Cir.1999). Here, neither subsection (g), nor any other provision of Item 402 expressly requires disclosure of the grant-date value of stock options proposed to be provided to the directors. Pursuant to this subsection, all that is required is disclosure of the arrangements for and amounts of directors' compensation. The description of the directors' standard fees and the options proposed to be awarded, as disclosed in the proxy statement and its Annex, plainly meets this basic requirement.

■ Appellant's position that subsection (g) requires disclosure of the grant-date value of the options is further refuted by an analysis of the entire text of Item 402. Well-settled rules of construction require that, in ascertaining the meaning of subsection (g), we look to the text of the Item as a whole. *See Rock of Ages Corp. v. Secretary of Labor,* 170 F.3d 148, 155 (2d Cir.1999). It is particularly instructive to compare the general language of subsection (g) with the substantially more detailed provisions of subsection (c) of the same Item. Subsection (c) describes mandatory disclosures with respect to option grants "made during the last completed fiscal year" to the most highly compensated executive officers. For options covered by this subsection, which do not include the options at issue here, Item 402(c) expressly requires disclosure of either their potential realizable value or, alternatively, their "grant date present value," which, in turn, may be calculated "under any option

pricing model." Instructions to this subsection expressly mention the Black–Scholes model as *one* possible way of calculating grant-date present value. *See* 17 C.F.R. § 229.402(c).[2]

Subsection (c) and its accompanying instructions make it plain that, when the Commission chose to make option value disclosure mandatory under Item 402, it did so expressly, specifying acceptable valuation methods. The absence of any mention of option values or of valuation methods from subsection (g), Compensation of Directors, is persuasive evidence that the Commission did not intend subsection (g) to require disclosure of grant-date value calculation for the options proposed to be awarded to non-employee directors. *See Smaldone v. Senkowski,* 273 F.3d 133, 137 (2d Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1606, 152 L.Ed.2d 621 (2002) (stating the principle that, when particular language is included in one section of a statute but omitted from another, it is generally presumed that the omission is intentional); *West Coast Truck Lines, Inc. v. Arcata Cmty. Recycling Ctr.,* 846 F.2d 1239, 1244 (9th Cir.1988) (same); *see also Black & Decker Corp. v. Commissioner,* 986 F.2d 60, 65 (4th Cir.1993) (applying a rule of statutory construction to interpret an administrative regulation); 1A Norman J. Singer, Statutes and Statutory Construction § 31:6 (6th ed.2002) (observing that rules of statutory construction also govern the interpretation of administrative regulations).

---

2. As noted, even this provision does not require grant-date valuation but provides for the alternative disclosure of potential realizable value. Potential realizable value is calculated as the excess of the market price of the underlying securities at the end of the options' term over the per-share exercise price of the options, multiplied by the number of the underlying shares. Companies choosing to disclose potential realizable value must

perform the calculation twice, once assuming that the underlying securities appreciate at the annual rate of five percent and once assuming an annual appreciation rate of ten percent. Symbol's proxy statement complies with subsection (c) by disclosing potential realizable values calculated under these two assumptions for options previously granted to the five most highly paid executive officers of the company.

Appellant's reliance on Financial Accounting Standards Board's Statement of Standards No. 123 is misplaced. Under this Statement of Standards, the preferred method of accounting in financial statements for options granted as compensation is to recognize the options' grant-date value as part of compensation expense. The Statement, however, does not purport to address the requirements for reporting proposed compensation in a proxy statement.

Given the persuasive evidence of the Commission's intent, and in the absence of any factual or legal support for the appellant's contrary position, we conclude that subsection (g) of Item 402 of Regulation S–K does not require disclosure of the Black–Scholes value of options proposed to be awarded to directors.

We now turn to the appellant's further claim that the absence of this information renders certain statements in the proxy statement materially misleading.

■ First, we reject appellant's contention that Symbol's proxy statement violated the Exchange Act because, without information about the Black–Scholes value of the Plan options, the proxy statement's assertions about non-employee directors' fees were materially misleading. The proxy statement describes payments to non-employee directors as follows:

> Directors who are not employees of Symbol are paid an annual retainer of $15,000, in equal quarterly installments. They also receive a fee of $2,500 for each Board of Directors meeting they attend or each meeting of a committee that is not held in conjunction with a Board of Directors meeting.

Appellant does not contend that this statement is inaccurate as to fees paid to Symbol's non-employee directors. Nor can this statement convey the impression that non-employee directors' compensation was limited to these fees, as the same section of the proxy statement also contains a description of the proposed Plan and its terms. Thus, the proxy statement makes it clear that each non-employee director's compensation also would include an option to purchase 50,000 shares of Symbol's common stock on the terms both summarized in the proxy statement and fully stated in the Annex. The failure to place an estimated present value on these options does not render the disclosure of director compensation misleading. There is no suggestion made in the description of the options that they have no value on the grant date. Accordingly, no statement is made materially misleading by the failure to calculate and ascribe to the options a grant-date present value.

■ We similarly find no merit in appellant's allegation that, in the absence of the Black–Scholes value of the Plan options, the proxy statement was materially false or misleading in stating that "[t]he actual value, if any, an executive will realize [from stock options] will depend on the excess of the market price over the exercise price on the date the option is actually exercised." The challenged statement is part of a footnote to a table summarizing quantitative information about options granted to Symbol's five senior executives during the year ending on December 31, 1999, as required by subsection (c) of Item 402 of Regulation S–K. Appellant challenges this statement because, he claims, the statement suggests that the non-employee directors' compensation "is materially less than it actually is." (Complaint ¶ 29.) In his appellate brief, appellant expands on this claim by explaining that the challenged statement misleadingly minimizes the non-employee directors' compensation by creating the false impression that the Plan options have no value until the date of their exercise. We disagree.

As an initial matter, the challenged statement does not purport to make any representations about the options proposed to be granted to the non-employee directors under the Plan. Both the express terms of the statement and its footnote location make it clear that the statement refers specifically to the options described in the table above it, i.e., options already granted, rather than proposed to be granted, to Symbol's five named executives during the preceding fiscal year. Furthermore, because the five named executives were Symbol employees, they were not covered by the Plan. Thus, both the table and the challenged footnote statement describe a set of options that is completely distinct from the Plan options.

Second, even if the challenged statement could be construed by a shareholder to have equal applicability to the Plan options, there is simply no basis for us to conclude that the statement is materially false or misleading. The statement accurately describes how value is realized when options are actually exercised. It makes no representations, expressly or by implication, about options' value at any time prior to their exercise. Thus, we cannot agree with appellant's interpretation of the challenged statement as suggesting that the Plan options have no value until they are actually exercised. Indeed, a reasonable shareholder would understand that stock options at the time of their grant have value, notwithstanding the uncertainty, until exercise date, of the actual value the option holder will eventually realize.

■ Accordingly, we reject appellant's argument that the challenged statement makes non-employee directors' compensation appear less than it actually was. As discussed above, the proxy statement makes clear that the non-employee directors' compensation would include the options proposed to be granted under the Plan and fully discloses the Plan terms. Appellant contends that this disclosure is inadequate because, according to appellant, the value of the options "is best determined under the Black–Scholes option pricing model or a pricing model specifically designed for these options." (Complaint ¶ 23.) Disclosure of an item of information is not required, however, simply because it may be relevant or of interest to a reasonable investor. For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir.1993). Here, no duty of disclosure has been established. As noted above, the relevant rule of the Commission, Item 402(g) of Regulation S–K, does not require disclosure of the present value of Plan options on the grant date. Similarly, this information is not required to make other information presented in the proxy statement not materially false or misleading. As the Delaware Court of Chancery correctly observed in a similar case,

> [w]hat makes good sense—good policy—in terms of *mandated corporate disclosure* concerning ... prospective option grants involves not simply the moral intuition that directors should be candid with shareholders with respect to relevant facts, but inescapably involves technical judgments concerning what is feasible and helpful in varying circumstances. Judgments concerning what disclosure, if any, of estimated present values of options should be mandated are best made at this stage of the science, not by a court under a very general materiality standard, but by an agency with finance expertise. An administrative agency—the Securities and Exchange Commission—has a technical staff, is able to hold public hearings, and can, thus, receive wide and expert input, and can specify forms of disclo-

sure, if appropriate. It can propose rules for comment and can easily amend rules that do not work well in practice. *Lewis v. Vogelstein,* 699 A.2d 327, 332–33 (Del.Ch.1997). If appellant believes that Black–Scholes value disclosure should be mandatory whenever shareholders' approval is sought for a proposed option grant, his remedy is to advocate a change in the regulations before the Commission.[3]

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

---

**3.** Appellant also argues that the proxy statement was misleading because it did not sufficiently explain that the three-for-two stock split of April 5, 2000 affected the number of shares each non-employee director would be entitled to purchase under the Plan. We find this argument to be without merit in light of the following explanation on page one of the proxy statement: "Any references to shares of Symbol common stock included in this Proxy Statement have been adjusted to reflect the two stock splits effective in 1998 and 1999 but not the recently declared 3 for 2 stock split which will be effective on April 5, 2000."