

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2006

# Seinfeld v. Becherer

Precedential or Non-Precedential: Precedential

Docket No. 05-1321

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Seinfeld v. Becherer" (2006). *2006 Decisions*. Paper 500.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/500

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1321

———

FRANK  DAVID SEINFELD,

Appellant

v.

HANS W. BECHERER; GORDON M. BETHUNE; JAIME
CHICO PARDO;
ANN M. FUDGE; JAMES J. HOWARD; BRUCE KARATZ;
RUSSELL E. PALMER; IVAN G. SEIDENBERG;
MARSHALL N. CARTER; DAVID M. COTE;
ROBERT P. LUCIANO; JOHN R. STAFFORD;
MICHAEL W. WRIGHT; HONEYWELL INTERNATIONAL,
INC.

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-05225)
District Judge: Honorable Katharine S. Hayden

———

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2006

Before: SLOVITER, McKEE and RENDELL, Circuit Judges

(Filed August 24, 2006)

———

A. Arnold Gershon
Ballon, Stoll, Bader & Nadler
New York, NY 10018

    Attorney for Appellant

Christopher P. Malloy
Skadden, Arps, Slate, Meagher & Flom
New York, NY 10036

> Attorney for Appellees Hans W. Becherer, Gordon M. Bethune, Jaime Chico Pardo, Ann M. Fudge, James J. Howard, Bruce Karatz, Russell E. Palmer, Ivan G. Seidenberg, Marshall N. Carter, David M. Cote, Robert P. Luciano, John R. Stafford, Michael D. Wright

Anthony M. Gruppuso
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
Newark, NJ  07102-5497

Yosef J. Riemer
Kirkland & Ellis
New York, NY  10022

> Attorneys for Appellee Honeywell International, Inc.

———

OPINION OF THE COURT

———

SLOVITER, <u>Circuit Judge</u>.

Appellant, Frank David Seinfeld ("Seinfeld"), who is allegedly a shareholder of Honeywell International, Inc. ("Honeywell"), brought this derivative suit contending that the corporation failed to make certain required disclosures in a proxy statement that solicited shareholder approval for a new stock option plan.  Seinfeld alleged that Honeywell failed adequately to disclose the number of shares of stock available for award under its plan, and failed to estimate the plan's cost. The District Court held that Seinfeld failed to state a claim upon which relief could be granted and dismissed the suit.  Seinfeld

appeals.[1]

## I.

Seinfeld filed this suit in November 2003 against Honeywell and the thirteen members of its Board of Directors. In his Amended Complaint, Seinfeld claimed that a March 17, 2003, Proxy Statement (the "Proxy Statement"), which Honeywell filed with the Securities and Exchange Commission ("SEC") in anticipation of its April 28, 2003, shareholders' meeting, failed to comply with § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and regulations promulgated thereunder.

The Proxy Statement solicited and obtained shareholder approval for Honeywell's 2003 Stock Incentive Plan (the "2003 Plan"), as a replacement for a 1993 employee awards plan that was set to expire. Thousands of Honeywell employees are eligible to receive awards under the 2003 Plan in the form of stock options, stock appreciation rights, performance awards, restricted units, restricted stock, and other stock-based awards. A Management Development Compensation Committee (the "Committee"), consisting of six members of Honeywell's Board of Directors, administers the 2003 Plan.

Under its 1993 awards plan, Honeywell was permitted to

---

[1] The District Court had jurisdiction under 15 U.S.C. § 78aa. This court has appellate jurisdiction under 28 U.S.C. § 1291. The grant of a motion to dismiss is reviewed de novo. In re NAHC Sec. Litig., 306 F.3d 1314, 1322 (3d Cir. 2002). We accept as true the factual allegations in the Amended Complaint and will affirm only if it is certain that Seinfeld would be able to prove no set of facts that would entitle him to relief. See Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). The text of the Proxy Statement, which Seinfeld invoked in his Amended Complaint and which the defendants attached to the motion to dismiss, is properly considered in reviewing the Rule 12(b)(6) motion. See In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993).

make annual grants of shares of common stock equal to 1.5% of its issued shares, including reacquired shares and any shares that were available for award in prior years but not granted. The 2003 Plan marked a "significant change" in determining the number of shares available for award "in recognition of shareowners' legitimate interest in not having their relative ownership in Honeywell materially impacted by Awards granted under the Plan." App. at 100. The Proxy Statement stated:

> [The 2003 Plan] provides for a maximum of 33,888,057 Shares to be issued as Awards, which is the number of Shares remaining available for future grants under the 1993 Employees Plan as of January 1, 2003, reduced by the number of Shares related to Awards made under the 1993 Employees Plan from that date to April 25, 2003, the date on which the 1993 Employees Plan terminates, subject to adjustment as provided under the terms of [the 2003 Plan] (see 'Adjustments' and 'Shares Available for Issuance', below).

App. at 100.

Under the heading "SHARES AVAILABLE FOR ISSUANCE," the Proxy Statement again explained that 33.8 million was the maximum number of shares to be issued, subject to possible adjustment. App. at 105. The shares available for issuance were stated to include shares from Honeywell's prior-year plans that had expired, or were forfeited, cancelled or settled in cash, on or after January 1, 2003. Moreover,

> Shares issuable under the 2003 [Plan] may consist of authorized but unissued Shares or Shares held in Honeywell's treasury. In determining the number of Shares that remain available under the Plan (including Shares originally authorized under the 1993 Employees Plan), only Awards payable in shares will be counted. If an Award under the Plan or any Prior Plan is terminated on or after January 1, 2003, by expiration, forfeiture, cancellation or for any other reason without issuance of Shares, or

4

is settled in cash in lieu of Shares, the Shares underlying such Award will be available for future Awards under the 2003 [Plan]. Also, if Shares are tendered or withheld on or after January 1, 2003, in payment of all or part of the Exercise Price of a Stock Option, or in satisfaction of tax withholding obligations, these Shares will be available for future Awards under the 2003 [Plan]. In addition, Shares may be reacquired under the Plan with cash tendered in payment of the Exercise Price of a Stock Option or with moneys attributable to the tax deduction enjoyed by Honeywell upon the exercise of disqualifying disposition of Stock Options. The Committee may also grant Shares under the Plan in connection with the assumption, conversion or substitution of Awards as a result of the acquisition of another company by Honeywell or a combination of Honeywell with another company.

App. at 106.

Under the heading "ADJUSTMENTS," the Proxy Statement disclosed that the maximum number of shares available for issuance under the 2003 Plan:

may be adjusted by the Committee, in its discretion, if the Committee determines that, because of any stock split, reverse stock split, dividend or other distribution (whether in the form of cash, Shares, other securities or other property), extraordinary cash dividend, recapitalization, merger, consolidation, split-up, spin-off, reorganization, combination, repurchase or exchange of Shares or other securities, the exercise of stock purchase rights, issuance of warrants or other rights to purchase Shares or other securities, or similar corporate transaction or event, such adjustment is required to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under the Plan.

5

App. at 106.

The Proxy Statement added that "[t]he aggregate annual amount of Awards to be granted under the 2003 [] Plan is not expected by the Committee to be materially different than the aggregate annual amount of Awards granted under the 1993 Employees Plan." App. at 108. Honeywell attached the complete text of the 2003 Plan as Exhibit A to the Proxy Statement. As of the date of the Proxy Statement, the Committee had made no awards under the 2003 Plan.

Seinfeld alleged in his Amended Complaint that the Proxy Statement was inadequate because it failed to disclose the number of Honeywell shares "underlying" the grants of stock options and other awards under the 2003 Plan. App. at 40. Although the Proxy Statement indicated that 33.8 million shares was the maximum to be issued, Seinfeld asserted that the possible adjustments to that number permit a much greater allowance of awards. Because a reasonable investor allegedly would not understand that the number of shares awarded could exceed 33.8 million, Seinfeld claimed that the defendants negligently issued the Proxy Statement. He also claimed that the Proxy Statement was false and misleading insofar as it failed to disclose the cost of the 2003 Plan.

The defendants moved to dismiss the Amended Complaint for (1) failure to make a demand upon the Board of Directors before filing suit, (2) failure to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 et seq. ("PSLRA"), and (3) failure to state a claim upon which relief can be granted. The District Court granted the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court explained that it need not decide whether Seinfeld's claims are subject to the PSLRA's heightened pleading standard because Seinfeld failed to state a claim under the federal securities laws even under the notice pleading standard of Rule 8(a)(2).

## II.

Section 14(a) of the Securities Exchange Act of 1934 makes it unlawful to solicit a proxy "in contravention of such

rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest." 15 U.S.C. § 78n(a). Rule 14a-9, which the SEC promulgated under § 14(a), provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ." 17 C.F.R. § 240.14a-9(a).

"Section 14(a) seeks to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations." Shaev v. Saper, 320 F.3d 373, 379 (3d Cir. 2003) (citations omitted). The "omission of information from a proxy statement will violate [§ 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976).

In addition to Rule 14a-9, Seinfeld relies upon SEC Rule 14a-101, i.e., "Schedule 14A," which specifies the information required in a proxy statement. 17 C.F.R. § 240.14a-101. We have stated that, "[a]lthough not determinative, Schedule 14A is persuasive authority as to the required scope of disclosure in proxy materials[.]" Gen. Elec. Co. v. Cathcart, 980 F.2d 927, 937 (3d Cir. 1992).

Seinfeld relies in particular upon Item 10 of Schedule 14A, which states with respect to cash and noncash compensation plans:

> If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:

7

. . . .

[(a)](2)(i) In the tabular format specified below, disclose the benefits or amounts that will be received by or allocated to each of the following under the plan being acted upon, <u>if such benefits or amounts are determinable</u>[.]

. . . .

[(b)](2)(i) With respect to any specific grant of or any plan containing options, warrants or rights submitted for security holder action, state:

(A) The title and amount of securities <u>underlying</u> such options, warrants or rights[.]

17 C.F.R. § 240.14a-101 (emphasis added).

### III.

Initially, we note that Seinfeld's counsel has represented numerous plaintiffs in challenges to proxy statements on essentially the same grounds as presented here, including the following cases: <u>Seinfeld v. Gray</u>, 404 F.3d 645 (2d Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 1464 (2006); <u>Seinfeld v. Bartz</u>, 322 F.3d 693 (9th Cir. 2003);[2] <u>Resnick v. Swartz</u>, 303 F.3d 147 (2d Cir. 2002); <u>Shaev v. Hampel</u>, No. 99 Civ. 10578(RMB), 2002 WL 31413805 (S.D.N.Y. Oct. 25, 2002), <u>aff'd</u>, 74 Fed. Appx. 154 (2d Cir. 2003); <u>In re 3Com Corp.</u>, No. C.A. 16721, 1999 WL 1009210 (Del. Ch. Oct. 25, 1999); <u>Cohen v. Calloway</u>, 246 A.D.2d 473 (N.Y. App. Div. 1998); <u>Lewis v. Vogelstein</u>, 699 A.2d 327 (Del. Ch. 1997).  Counsel have been singularly unsuccessful in their effort to change the law on proxy solicitations, particularly as to the valuation of stock options.

---

[2] Despite the same surname, the plaintiffs in <u>Bartz</u> and <u>Gray</u> are not the same individual as the plaintiff in the present suit.  We have no information as to whether or how the ubiquitous Seinfeld plaintiffs are related.

8

**(a)    Disclosure of the amount of shares available for award under the 2003 Plan**

Seinfeld contends that Rule 14a-9 and Schedule 14A (Items 10(b)(2)(i)(A) and 20) required Honeywell to disclose the total number of shares underlying the stock-based awards available under the 2003 Plan, and that Honeywell's representation of 33.8 million shares was false and misleading. The District Court held that the Proxy Statement did not violate Rule 14a-9, as Honeywell prominently displayed the maximum number of shares available and the circumstances under which that number could increase. The District Court observed that there was no allegation that more specific estimates could have been calculated or that estimates about the increased number of shares would have been helpful. Providing a more specific prediction as to the number of shares available would require knowledge of several variables, including the preferences of shareholders who received awards under prior plans to forfeit, cancel or exercise their stock-based benefits. The District Court cited the practical difficulties in gathering such information and concluded that requiring it would result in an avalanche of trivia that would serve only to confuse shareholders and burden the soliciting corporation.

The District Court also rejected Seinfeld's reliance upon Item 10(b)(2)(i)(A) of Schedule 14A, holding, inter alia, that disclosure of the number of available shares and the circumstances under which that number could increase satisfied Schedule 14A's requirements. As to Seinfeld's reliance on Item 20,[3] the District Court noted that it appears to be a catchall

---

[3] Item 20 of Schedule 14A provides:

If action is to be taken on any matter not specifically referred to in this Schedule 14A, describe briefly the substance of each such matter in substantially the same degree of detail as is required by Items 5 to 19, inclusive, of this Schedule, and, with respect to investment companies registered under the Investment Company Act of 1940, Item 22 of this Schedule.

provision, and because the Proxy Statement satisfied Item 10(b)(2)(i)(A), any claimed violation of Item 20 was moot.

We fully agree with the District Court's analysis. Seinfeld contends on appeal that the plain language of Item 10(b)(2)(i)(A) required disclosure of the amount of securities "underlying" the stock options, not the number of "issuable" shares. Appellant's Br. at 24. He argues that shares underlying an option are not "'issued' shares," and only when those shares are transferred can they be considered issued. Id. at 26. As such, he contends, stock underlying an employee option is unissued, and for options that are settled in cash, no shares will ever issue. He further claims that, because Item 10(b)(2)(i)(A) addresses only stock options, Item 20 fills in the gap and requires disclosure of the number of underlying shares for awards other than stock options, such as stock appreciation rights, restricted stock, and other stock-based awards.

Seinfeld's reading of Item 10(b)(2)(i)(A) is misguided. That section requires disclosure of the "title and amount of securities underlying [ ] options." 17 C.F.R. § 240.14a-101. In Gray, the Court of Appeals for the Second Circuit considered this language and concluded that "Item 10 plainly requires the disclosure of those securities that could be issued to satisfy [the company]'s obligation to deliver shares under the Plan when an option-holder exercises options." 404 F.3d at 649 (emphasis added). The court explained that "we cannot conclude that, in stating its general option disclosure requirement, the regulation used the term 'amount of securities underlying . . . options,' . . . to mean 'amount of options.'" Id. (citation omitted). We agree, as there is simply no indication in the SEC's regulations that disclosure of the amount of securities "underlying" employee options warrants a statement beyond disclosure of the shares available for issuance.

In the same case, the Second Circuit rejected the plaintiff's challenge to the Item 10 disclosure, noting that

17 C.F.R. § 240.14a-101.

10

the proxy statement informs investors that "[t]he aggregate number of shares of [company] stock available for issuance under the 2003 Plan will not exceed 30 million." The proxy statement further explains that this number may be increased by three million shares if [the company] acquires another company. The Plan itself is attached to the proxy statement, and contains similar language. This disclosure adequately informs investors of the amount of securities that could be issued to satisfy [the company]'s obligation to deliver shares under the Plan when an option-holder exercises options.

404 F.3d at 649. Similarly, the district court in Shaev rejected the shareholder-plaintiff's Item 10 challenge where the proxy statement advised that in addition to the 14 million shares available for award, the total number could be increased (1) by replacing shares available under a prior plan, (2) by the company repurchasing shares in the market and designating them as available under the plan, or (3) by substituting company shares for those held by an employee of an acquired company. Shaev, 2002 WL 31413805, at *7.

Here, the Proxy Statement similarly informed shareholders that the maximum number of shares to be issued was 33,888,057, but that this number could increase under specified circumstances, including where shares relating to awards under a prior plan were forfeited, cancelled, or settled in cash on or after January 1, 2003, certain shares were reacquired, or shares were made available as a result of the acquisition of or combination with another company. Honeywell prominently displayed this information in the Proxy Statement and attached the full 2003 Plan thereto. Like the District Court, we reject Seinfeld's contention that this disclosure was confusing to the reader. Cf. Shaev, 2002 WL 31413805, at *8 ("No reasonable shareholder reading the entirety of the Proxy Statement would have believed that the Plan was authorizing only 14 million shares.").

Seinfeld claims that disclosing the 33.8 million figure as the maximum number of shares available for award understated

11

the burden of the 2003 Plan and thus was materially false or misleading in violation of Rule 14a-9. Seinfeld complains that the number of shares devoted to the 2003 Plan could increase with no limit, particularly because shares underlying options that are settled in cash become available for future awards. As we have noted, however, Schedule 14A did not require Honeywell to speculate as to the number of shares that might become available for award based on the contingencies specified in the Proxy Statement. Nor would such speculation have provided information that its shareholders would have found material, as there is no indication that Honeywell could have predicted accurately whether, or to what extent, the number of shares would exceed the 33.8 million maximum.

Seinfeld cites the Proxy Statement's disclosure that "[t]he aggregate annual amount of Awards to be granted under the 2003 [Plan] is not expected by the Committee to be materially different than the aggregate amount of Awards granted under the 1993 Employees Plan." App. at 108. He contends that this statement reveals that Honeywell must have known the exact number of shares underlying the 2003 Plan when it filed the Proxy Statement. Seinfeld concedes, however, that there is nothing per se false or misleading in the Proxy Statement's comparison to the 1993 plan, and we fail to see how that comparison undermines the information disclosed. Honeywell merely stated that aggregate annual awards under the 2003 Plan are <u>not expected</u> to be materially different than past awards. Given the stated circumstances under which the maximum number of shares available for issuance could increase under the 2003 Plan, a reasonable reader of the Proxy Statement could not interpret Honeywell's expectation as an indication that it knew, and yet withheld, information as to the exact number of options to be granted.

Seinfeld also relies upon the Financial Accounting Standards Board's ("FASB") Statement No. 123. Seinfeld contends that this Statement provides that the economic consequences of granting options are best accounted for at the time of the grant, not at the time of the option's exercise. He concedes that FASB Statement No. 123 concerns the reporting of employee stock options in a company's financial statement for

12

purposes of arriving at reported earnings. He argues, nevertheless, that because Honeywell measures the cost to grant stock options as a pro forma expense against income, the number of underlying shares determines the pro forma cost to Honeywell.

Two Courts of Appeals have rejected Seinfeld's contention. The Ninth Circuit has aptly observed that "'[t]here are salient differences . . . between financial statement disclosure of an estimated value of stock options under a plan and disclosure for the purpose of shareholder ratification of adoption of the plan.'" Bartz, 322 F.3d at 697 (quoting Lewis, 699 A.2d at 332). In Resnick, the Second Circuit similarly noted that while FASB Statement No. 123 recommends recognizing "options' grant-date value as part of compensation expense" in financial statements, it "does not purport to address the requirements for reporting proposed compensation in a proxy statement." 303 F.3d at 153; see also Gray, 404 F.3d at 649-50 ("It remains true that technical accounting standards governing the appropriate timing for recognition of revenues and costs simply do not change the SEC's straightforward regulations, including those laid out in Item 10, governing proxy statement disclosure."); Bartz, 322 F.3d at 697 (observing that "FASB Statement No. 123 is not pertinent"). As these courts have adequately explained, Seinfeld's attempt to import the requirements for an accurate report of earnings in a financial statement into the required disclosures for a proxy solicitation under SEC regulations must be rejected.

In short, the District Court did not err in holding that Seinfeld failed to state a claim regarding disclosure of the shares available for award under the 2003 Plan.

**(b)     Failure to disclose the cost of the 2003 Plan**

Seinfeld argues that Honeywell improperly omitted a statement of the cost of the stock options to be awarded under the 2003 Plan. He claims that this information was required both by the duty to disclose material information under Rule 14a-9 and by Schedule 14A, Item 10(a)(2)(i).

13

The District Court held that, with respect to materiality, a valuation of stock options, such as under the Black-Scholes model, is "soft" information, and courts have uniformly held that such information is not a material component of a proxy statement seeking approval of a compensation plan.[4] App. at 16-17 (citing Lewis, 699 A.2d at 333). The Court concluded that because a Black-Scholes calculation based on speculation would yield unreliable information, shareholders would find such information unhelpful. The Court also rejected Seinfeld's reliance upon Item 10(a)(2)(i), which expressly requires disclosure of compensation amounts only if such benefits or amounts are "determinable." It observed that nothing in Item 10(a)(2)(i) requires a valuation of stock options under a newly adopted plan where benefits under the plan have yet to be allocated.

Both the Second and Ninth Circuits have rejected the arguments that Seinfeld raises with regard to the valuation of stock options, and we take this opportunity to join those courts. In Bartz, the plaintiff-shareholder challenged a proxy statement seeking approval of an amendment to a program for awarding options to outside directors. 322 F.3d at 697. The plaintiff argued that the proxy statement was misleading because it did not include a Black-Scholes valuation and instead merely disclosed that the company paid each director an annual retainer and granted the directors stock options. The Ninth Circuit observed that while Black-Scholes is one of several well-established and reliable methods used to value options, there was no support in the SEC regulations for plaintiff's

---

[4] "Black-Scholes" is a widely accepted formula for calculating the value of a stock option. "The essential factors the formula takes into account driving the value of an option to purchase common stock are: (1) the stock price on the date of valuation; (2) the exercise price at which the option holder can purchase the stock; (3) the amount of time over which the option will be valid and outstanding; (4) the volatility of the underlying common stock; and (5) the risk-free rate of interest rates at the time the option is being valued." Mathias v. Jacobs, 238 F. Supp. 2d 556, 574 n.12 (S.D.N.Y. 2002).

argument that use of Black-Scholes was required in valuing options for purposes of a proxy statement. Id. ("We conclude that SEC regulations do not require the use of the Black-Scholes valuation and that the proxy statement is not materially false and misleading."); accord Resnik, 303 F.3d at 155 ("If appellant believes that Black-Scholes value disclosure should be mandatory whenever shareholders' approval is sought for a proposed option grant, his remedy is to advocate a change in the regulations before the Commission.").

Seinfeld argues that Bartz and Resnick were wrongly decided because they conflict with the goal of protecting the shareholders' vote through vigorous enforcement of the full disclosure requirements of § 14(a) and the SEC's regulations. In that light, he maintains that Item 10(a) of Schedule 14A required disclosure of the cost of the 2003 Plan. Item 10(a), however, expressly requires disclosure only if plan costs are "determinable." Honeywell had made no awards at the time it filed the Proxy Statement, and it could not have known if employees would meet the performance targets to attain the proposed awards. At best, Honeywell could have disclosed an estimate of potential cost, which, it correctly maintains, it was not required to do. As the District Court observed, a Black-Scholes valuation based on speculation would have produced unreliable information, and, thus, one was not required under Rule 14a-9.

Seinfeld again relies upon FASB Statement No. 123, as well as FASB Statement No. 148, which amends Statement No. 123, because those statements require Honeywell to report the cost of its options on future financial statements if options are awarded under the 2003 Plan. As we have noted, however, the FASB standards apply to reporting for financial statements, not proxy solicitation. The FASB standards concern the disclosure of historical data and are simply inapplicable to a projection of cost for a stock option plan in which no awards have been made.

We conclude that SEC regulations did not require Honeywell to measure the cost of its stock-option plan by means of an option-pricing model like Black-Scholes, and the failure to provide such an estimation did not render the Proxy Statement

15

false or misleading. The District Court did not err, therefore, in holding that Seinfeld failed to state a claim upon which relief can be granted.[5]

## IV.

For the reasons stated, we will affirm the District Court's judgment.

---

[5] In light of our holding, we need not reach Honeywell's arguments that dismissal of the Amended Complaint was warranted because Seinfeld did not make a demand upon the Board of Directors before filing suit and because the complaint failed to satisfy the heightened pleading requirements of the PSLRA.