## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
                                )
         Plaintiff,     )
                                )   **Case No. 2009008259**
     v.                    )
                                )
**ANDRE CARTER**,     )
                                )
         Defendant.     )

Submitted: March 18, 2022
Decided: May 17, 2022

### OPINION ON DEFENDANT'S
### MOTION TO SUPPRESS - DENIED

*Daniel McBride, Deputy Attorney General*, Office of the Attorney General
Wilmington, Delaware, *Counsel for State of Delaware.*

*Elise Wolpert, Esquire*, Office of Eugene I. Maurer, Jr., P.A.
Wilmington, Delaware, *Counsel for Defendant, Andre Carter.*

**Jones, J.**

Defendant, Andre Carter ("Carter"), has filed a Motion to Suppress to challenge the admissibility of evidence that was obtained from his Gray/black iPhone by way of execution of two (2) search warrants. For the reasons that follow, Defendant's Motion to Suppress is DENIED.

On July 13, 2020, a New Castle County Grand Jury indicted Carter and eight (8) other codefendants with: Criminal Racketeering, Conspiracy to Commit Criminal Racketeering, Drug Dealing Cocaine, Drug Dealing Heroin, Drug Dealing Marijuana, Drug Dealing a Schedule II narcotic controlled Substance, four (4) counts of Aggravated Possession of a Controlled substance and accompanying charges of Conspiracy Second Degree and Money Laundering. These charges are currently pending before this Court.

On July 16, 2020, Detective Andrew Rosaio ("Rosaio") obtained a search warrant ("Warrant 1") to extract specific digital information stored on a smartphone recovered from Carter during a June 25, 2020 arrest made by the Wilmington Police. Warrant 1 was executed and the specified information was extracted from Carter's smartphone. The information was then provided to Rosaio in a cellular extraction report.

Carter filed the instant Motion to Suppress alleging that Warrant 1 amounted to a general warrant because it lacked specificity, the time period for which the materials were requested was too expansive, and that it failed to establish probable cause that any evidence of the alleged criminal activity would be found on the

2

smartphone. The State responded by acknowledging that the scope of the warrant was overbroad primarily because the time period for the materials requested was too expansive but nonetheless, asserted that probable cause did exist regarding some, but not all, of the data sought and obtained through the search warrant. The State's position was that because the warrant was overbroad, and not a general warrant, this Court would be allowed to determine the inclusion and exclusion of the evidence based on what is supported by probable cause rather than making a blanket determination.

The State also noted that it expected Rosaio to obtain a second search warrant for Carter's cellular phone. According to the State the second warrant would not include any facts or information discovered as a result of Warrant 1. According to the State, the search of a smartphone simply involves the copying of the information stored on the phone and does not delete or disturb the information on the phone. The State maintains that the inherent nature of smartphones presents the unique opportunity for law enforcement to correct any mistakes that were made in connection with an initial search by obtaining a second search warrant and conducting a second search of the phone. According to the State, this "do over" comes from an entirely independent source – the second warrant. Therefore, under the Fourth Amendment's independent source doctrine a second search, that does not rely on the first warrant, is proper.

The State did, in fact, obtain a second search warrant ("Warrant 2") on February 21, 2022 to "correct those flaws" in the first. In its Supplemental Response, the State noted that Warrant 2 did not include any facts either directly or indirectly discovered from the initial search of Carter's iPhone. Further, the State argued that Warrant 2 provides for a more limited search than the first – limiting the types of data to be searched and a stricter temporal limit. The State maintained its position that Warrant 1 established probable cause and that Warrant 2 provides additional support that there is probable cause to believe that evidence of the crimes may be found on Carter's cellular device.

Carter filed a Reply in support of his Motion and an Answer to the State's initial and supplemental Responses. Carter argues that the independent source doctrine is not applicable in this case because Warrant 2 is dependent on Warrant 1. Carter advances that the only reason the State sought and obtained Warrant 2 is because Carter filed the instant motion pointing out the flaws in Warrant 1. Further, Carter advances that Warrant 1 amounts to a general warrant because it is both overbroad and insufficiently particular. Carter asks this Court to employ a "four corners" test in analyzing Warrant 1 and that no testimony should be permitted to supplement the record nor should this Court give any weight to the facts contained within Warrant 2. As such, it is Carter's position that all the evidence seized under Warrant 2 constitutes fruit of the poisonous tree and, thus, is inadmissible.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.'"[1] "The 'basic purpose of this Amendment,' "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."[2] The Fourth Amendment was crafted as a "response to the reviled 'general warrants' and 'writ of assistance' of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity.'"[3] The United States Supreme Court expanded the scope of the Fourth Amendment to include protection of "certain expectations of privacy[,]" being that the Fourth Amendment's purpose is to protect people, not places.[4]

"When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' [the Court has] held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause."[5] The same two basic guideposts have been followed in application of the Fourth Amendment.[6] "First, that the Amendment seeks to secure 'the privacies of life' against 'arbitrary power.' Second, and relatedly, that a central aim of the Framers was "to place obstacles in the way of a too permeating police surveillance."[7] "As technology has

---

[1] *Carpenter v. United States*, 138 S.Ct. 2206 (2018).
[2] *Id.* at 2213.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.* at 2214.
[7] *Id.*

enhanced the Government's capacity to encroach upon areas normally guarded from inquisitive eyes, [the Supreme] Court has 'sought to assure [] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.'"[8] As such, "mechanical interpretation" of the Fourth Amendment has been struck down by the Court.[9]

In *Riley v. United States*,[10] the Supreme Court specifically addressed application of the Fourth Amendment to cell phones. "[R]ecognizing the 'immense storage capacity' of modern cell phones" the Court held that a warrant must generally be obtained before the contents of a cellphone can be searched by law enforcement.[11] The Court ultimately determined that the rationales supporting searches incident to arrest set forth in *Chimel v. California*[12] and *United States v. Robinson*[13] – concern for officer safety and concern for destruction or loss of evidence – do not have much force with respect to "the vast store of sensitive information on a cell phone."[14] The Delaware Supreme Court has cited to *Riley* for support on various occasions when confronted with the validity of a search warrant to search the contents of a cell phone.[15]

---

[8] *Id.*

[9] *Id.*

[10] 572 U.S. 373 (2014).

[11] *Carpenter*, 138 S.Ct. at 2214 (citing *Riley*, 572 U.S. at 393)).

[12] 395 U.S. 752 (1969).

[13] 414 U.S. 218 (1973).

[14] *Carpenter*, 138 S.Ct. at 2214 (citing *Riley*, 573 U.S. at 386).

[15] *See e.g., Wheeler v. State*, 135 A.3d 282 (Del. 2016); *State v. Waters*, 2020 WL 507703 (Del. Super. Ct. Jan. 30, 2020); *Taylor v. State*, 260 A.3d 602 (Del. 2021); *State v. Palmer*, 2016 WL 3044499 (Del. Super. Ct. May 16, 2016).

Both parties agree that Warrant 1 is invalid in some respect. Carter advances that Warrant 1 is an invalid general warrant because it lacks particularity and probable cause. The State responds that Warrant 1 does not amount to a general warrant but instead an overly broad warrant.

"[A] general warrant … is invalid because it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence."[16] Where a Court finds a warrant amounts to a general warrant, the proper remedy is suppression of all evidence obtained by way of the warrant.[17] "[A]n overly broad warrant … 'describe[s] in both specific and inclusive general terms what is to be seized,' but 'authorizes the seizure of items as to which there is no probable cause….'"[18] The proper remedy is suppression of evidence where probable cause is lacking in the warrant and leaving untouched the remainder of the warrant which satisfies the Fourth Amendment.[19]

It is this Court's view that Warrant 1 is an overly broad warrant. The Court finds instructive the Delaware Supreme Court decisions in *Buckham v. State*,[20] *Taylor v. State*,[21] and *Wheeler v. State*.[22] In all three cases, the Court found the search warrants at issue amounted to general warrants. In so finding, the Court noted that

---

[16] *Taylor v. State*,260 A.3d 602, 617 (Del. 2021) (citing *United States v. Yusuf*, 461 F.3d 373, 393, n. 19 (3d. Cir. 2006) (internal citations omitted). *See also Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (a general warrant permits "a general exploratory rummaging in a person's belongings.").

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] 185 A.3d 1 (Del. 2018).

[21] 260 A.3d 602 (Del. 2021).

[22] 135 A.3d 282 (Del. 2016).

the search warrants contained the broad language of "any and all stored data[,]" and no relevant time frames were specified. Additionally, the Court highlighted that the warrants all contained the "open-ended language, 'including but not limited to[,]' to describe the places to be searched."[23]

In this case, Warrant 1 is distinguishable in various respects from those at issue in *Buckham*, *Taylor*, and *Wheeler*. Warrant 1 does not contain the "any and all stored data" language. Rather, it states that "any pertinent data in regard to texts, phone call logs, contacts, photos/videos of illegal narcotics and voicemails related to the purchasing of illegal narcotics, and packaging material recovered in regard to this case from the cell phone recovered from Andre Carter[.]"[24] Further, Warrant 1 does not contain the open-ended language "including but not limited to."

Despite these differences, the Court does agree with Carter that the warrant lacks probable cause to seize data prior to January 19, 2020 based on the information contained within the four corners of the warrant. Nonetheless, this, in and of itself, is insufficient to classify the warrant as a general warrant. In *State v. Waters*,[25] this Court was confronted with a similar issue. The State obtained a warrant to search for evidence during a specific period of time. Cognizant of the temporal limitation set forth in the warrant – two days before and two weeks after the homicide – the Court

---

[23] *Id.* at 615 (citing *Buckham*, 185 a.3d at 15;*see also Wheeler*, 135 A.3d at 289 (listing the areas of the phone to be searched 'to include but not limited to: registry entries, pictures, images, temporary internet files, internet history files, chat logs, writings, passwords, usernames, buddy names, screen names, email, connection logs, or other evidence.").

[24] *See* Exhibit "A," to Defense's Motion to Suppress Evidence Seized From Defendant's iPhone at p.2 and p.8, ¶29.

[25] 2020 WL 507703 (Del. Super. Ct. Jan. 30, 2020).

stated that the warrant "is fairly subject to attack for a lack of articulation of where and why that particular window of time was chosen."[26] Ultimately, the Court concluded:

> [T]he warrant in this case was supported by probable cause to believe that the phone in question was in the Defendant's possession on the night off the murder and its cell site information may offer up evidence of the Defendant's whereabouts at the time of the crime. But the warrant and affidavit fail to offer probable cause as to what evidence, if any, might be gleaned from evidence of the phone's location 4 days before and 2 weeks after the murder and it thus authorizes the seizure of more cell site location information than is supported by probable cause. *Thus, it is an overly broad warrant*. But because it is particular in that it seeks only cell site location information and only over a specific period of time and does not authorize a "general rummaging" through all data on a cell phone, it cannot be characterized as a general warrant and *suppression of all of its fruits cannot be the appropriate remedy*.[27]

Here, the Court agrees with Carter that Warrant 1 and its affidavit fail to make a showing of probable cause as to what evidence, if any, might be discovered from Carter's iPhone prior to the State learning of his alleged involvement with the Renteria Drug Trafficking Organization. Thus, while suppression of all the evidence discovered by way of Warrant 1 is not appropriate, suppression of any evidence obtained prior to January 19, 2020 is warranted.

In addition to the material pre-January 19, 2020, Carter maintains that the affidavit lacks probable cause for the items to be searched that post date January 29, 2020. In reviewing the warrant, this Court takes a differential approach to the magistrate's decision and does not engage in a "hyper-technical approach to the

---

[26] *Id.* at *2.
[27] *Id.* at *4 (emphasis added).

evaluation of the search warrant affidavit in favor of a common-sense interpretation."[28] Probable cause is measured not by precise standards, but by the totality of the circumstances through a case-by-case review of the 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.[29] Applying these principles to the remainder of the affidavit and warrant, this Court concludes that when one allows for the reasonable inferences to be drawn from the facts in the warrant that there was sufficient probable cause for the magistrate to issue the warrant for the post January 19, 2020 time frame and for the items requested.

The only issue Carter takes with Warrant 2 is that it is wholly dependent on Warrant 1 and, thus, the independent source doctrine does not apply. The State disagrees and advances that no evidence discovered by way of Warrant 1 was used in the police application for Warrant 2. Before addressing the applicability of the independent source doctrine, this Court first notes that it is satisfied – irrespective of Warrant 1—Warrant 2 meets the particularity and probable cause requirements to be a valid warrant.

To be valid, a search warrant "must describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based."[30] "The manifest purpose of this particularity requirement [i]s to prevent

---

[28] *Larry M. Jensen v. State of Delaware*, 482 A.2d 105, 111 (Del. 1984).
[29] *State of Delaware v Richard Maxwell*, 624 A.2d 926, 928 (Del. 1993).
[30] *Wheeler v. State*, 135 A.3d 282, 299 (Del. 2016) (citing U.S. Const. Amend. 4; Del. Const. art. 1, § 6; 11 Del. Code § 2307(a); *United States v. Zimmerman*, 277 F.2d 426, 432 (3d Cir. 2002) (citation omitted).

general searches." "By limiting the authorization to search the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[31]

Here, Rosaio provided a twenty-two- (22) page application for Warrant 2. In this application, Rosaio described the things to be searched with sufficient particularity and his request is no broader than the probable cause on which it is based.[32] Therefore, this Court concludes that the search conducted pursuant to Warrant 2 was valid because Warrant 2 itself is a valid warrant.

However, regardless of whether Warrant 1 is a general or overly broad warrant, because the State sought and obtained Warrant 2, the issue becomes whether Warrant 2 survives in lieu of Warrant 1's partial invalidity. The parties' arguments focus on the independent source doctrine. Carter advances the independent source doctrine does not apply because Warrant 2 is wholly dependent on Warrant 1. The State responds that because the police did not rely on any evidence obtained by way of Warrant 1 in obtaining Warrant 2 that the independent source doctrine does apply.

---

[31] *Id.* (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (citations omitted); *see also Arizona v. Gant*, 556 U.S. 332, 345 (2009)("[T]he central concern underlying the Fourth Amendment [is] the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.") (citations omitted).)

[32] This Court notes that Warrant 1, in contrast, was only eight (8) pages long and the period of time for which Officer Rosaio requested to search for the named items was not fully supported by probable cause, e.g. Officer Rosaio requested to search for items from January 1, 2018 to June 25, 2020. However, in both warrant applications, Officer Rosaio indicated that he was not made aware of Carter's alleged involvement with the Renteria Drug Trafficking Organization (DTO) until May and June of 2020.

"Where it is shown that there has been a violation of a defendant's right to be free from illegal searches and seizures, the exclusionary rule acts as the remedy."[33] The rule requires that any evidence recovered or derived from an illegal search or seizure must be excluded from evidence in the absence of an independent source for or a situation allowing for the inevitable discovery of evidence."[34] "The Delaware Supreme Court has recognized exceptions to the warrant requirement where 'official misconduct should not fatally taint evidence[.]'"[35] "Rather, 'taint may be purged and the evidence may be admissible through one of the doctrinal exceptions to the exclusionary rule, such as the independent source doctrine[.]'"[36]

"The rationale behind the Court's power to exclude evidence that the police have unlawfully obtained is to deter police from violating constitutional and statutory protections."[37] "The Court will not reward bad behavior by putting the State in a better position than it would have been if the police had not engaged in illegal conduct."[38] "The corollary to this idea is that the State should not be put into a worse position 'simply because of some earlier police error or misconduct[.]'"[39] Courts have created "numerous exceptions to the exclusionary rule[,]" including the independent source doctrine.[40]

---

[33] *State v. Coursey*, 136 A..3d 316, 322 (Del. Super. Ct. 2016) (citing *jones v. State*, 745 A.2d 856, 872 (Del. 1999).
[34] *Id.*
[35] *State v. Lambert*, 2015 WL 3897810, at *6 (Del. Super. Ct. Jun. 22, 2015) (internal citations omitted).
[36] *Id.* (citing *Lopez v. Vazquez v. State*, 956 A.2d 1280, 1292 (Del. 2008) (internal citations omitted)).
[37] *State v. Blackwood*, 2020 WL 975465, at *7 (Del. Super. Ct. Feb. 27, 2020).
[38] *Id.*
[39] *Id.*
[40] *Id.*

The independent source doctrine recognizes that "even if police engage in illegal investigatory activity, evidence will be admissible if it is discovered through a source independent of the illegality."[41] The United States Supreme Court described the independent source doctrine as follows:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse* position that they would have been in if no police error or misconduct had occurred…. When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent of any error or violation."[42]

Based on this Court's own review of both warrants, the Court finds that the independent source doctrine is applicable on these facts. None of the evidence obtained by way of Warrant 1 was used by the police in their application for Warrant 2. While this Court is cognizant of Carter's frustrations that the State, in essence, gets to fix its errors, suppression of *all* evidence retrieved from Carter's iPhone(s) does nothing to further the purposes of the exclusionary rule.

As the Delaware Supreme Court has stated, "official misconduct should not fatally taint evidence[,]" and otherwise tainted evidence may still be admissible pursuant to an exception to the exclusionary rule, like the independent source doctrine.[43] Additionally, the "prime purpose" of the exclusionary rule is to deter police from violating both constitutional and statutory protections afforded to

---

[41] *Id.* at *8.
[42] *Murray v. U.S.*, 487 U.S. 533, 537 (1988) (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)).
[43] *Lambert*, 2015 WL 3897810, at *6.

individuals by the United States and Delaware constitutions. If this Court were to suppress all evidence obtained by way of the warrants at issue, the State would be put in a worse position than prior to the police misconduct. Such a decision would both run afoul of the prime purpose of the exclusionary rule and wholly disregard this Court and the United States Supreme Court decisions which stand for precisely the opposite proposition – that the State should *not* be put into a worse position "simply because of some earlier police error or misconduct[.]"[44]

Defendant cites no cases to the Court which stand for the proposition that a subsequent warrant obtained by the *same* information used to obtain a prior warrant invalidates the former. That is precisely what happened in this case. In fact, this Court recently addressed a similar issue in *State v. Blackwood*. In *Blackwood*, police obtained information from a forensic extraction of Defendant's cell phone pursuant to the Warrant. The Defendant argued that certain evidence should be suppressed because it fell outside the reasonable time period supported by probable cause in the warrant. This Court concluded that the evidence was admissible under the independent source doctrine, stating:

> Defendant has asked this Court to suppress Defendant's internet search history from June 17 to June 22, 2018, his cell cite location information from June 16 to June 17, 2018, and a photograph of Defendant. the police obtained this information from the forensic extraction of Defendant's cell phone pursuant to the Warrant. However, separate and apart from the Warrant, Defendant's voluntary consent permitted the police to obtain all this information. Because Defendant's consent was

---

[44] *State v. Blackwood*, 2020 WL 975465, at *7.

voluntary and not casually connected to the Warrant, the three challenged items of evidence should not be suppressed.[45]

In the present case, this Court finds that Warrant 2 is separate and apart from Warrant 1 because the information used in the warrant application by Rosaio was available to him absent any evidence he discovered pursuant to Warrant 1. The only difference this Court finds between the two warrants is that in his application for Warrant 2, Rosaio states the information that he knew *prior to the execution of Warrant 1*, with greater particularity and seeks evidence from a more limited time period. As a result of this Court's finding that Warrant 2 is a valid warrant because the information used in its application comes from a source independent from any evidence seized pursuant to the overly broad Warrant 1, the challenged evidence will not be suppressed.

Carter also moves to suppress evidence from two (2) additional iPhones seized, a red iPhone and a silver iPhone. Carter's arguments as to these two iPhones are the same as to the gray/black iPhone. For the same reasons set forth in this opinion as to the gray/black iPhone, the motion to suppress as to the other two (2) iPhones is also DENIED.

Therefore, Carter's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

*Original to Prothonotary*

---

[45] *Id.*

15