**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1997
_____

STACIE BYERS and DEBORAH A. SELTZER,
individually and on behalf of all others similarly situated

Appellants

v.

INTUIT, INC.; H&R BLOCK DIGITAL TAX SOLUTIONS,
LLC; and FREE FILE ALLIANCE, LLC, each individually
and on behalf of all others similarly situated;
THE INTERNAL REVENUE SERVICE

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 07-4753)
District Court Judge: Honorable Thomas N. O'Neill, Jr.

_____

Argued November 9, 2009
Before: AMBRO, GARTH and ROTH, <u>Circuit Judges</u>

(Opinion Filed: March 3, 2010)


Thomas Martin, Esquire (Argued)
Alan M. Feldman, Esquire
Thomas More Marrone, Esquire
Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock &
Dodig
1845 Walnut Street, 25th Floor
Philadelphia, Pennsylvania 19103

<u>Counsel for Appellants</u>

Judith A. Hagley, Esquire (Argued)
Jonathan S. Cohen, Esquire
Gilbert S. Rothenberg, Esquire
Tax Division
Department of Justice
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, D.C. 20044

<u>Counsel for Appellee Internal Revenue Service</u>

Stephen M. Ryan, Esquire (Argued)
Jason A. Levine, Esquire
Rahul Rao, Esquire
Paul M. Thompson, Esquire

McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, D.C.

<u>Counsel for Appellee Free File Alliance, LLC, et al.</u>


Aaron B. Hewitt, Esq.
Scott A. Stempel, Esq.
Morgan Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Suite 800 North
Washington DC 20004

Jami W. McKeon, Esq.
Morgan Lewis & Bockius
One Market Street
Spear Street Tower
San Francisco, CA 94105

Patrick A Particelli, III, Esq.
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia PA 19103

<u>Counsel for Appellee Intuit Inc.</u>

Laurence Z. Shiekman, Esq.
Larry R. Wood, Jr., Esq.
Pepper Hamilton
18th & Arch Streets

3000 Two Logan Square
Philadelphia PA 19103

Counsel for Appellee H& R Block Digital Tax
Solutions,LLC.

_____

**OPINION**

_____

GARTH, Circuit Judge:

This appeal arises out of the District Court's dismissal of a putative class action brought by Plaintiff-Appellants Stacie Byers and Deborah A. Seltzer against Intuit, Inc., H&R Block Digital Tax Solutions LLC, Free File Alliance, LLC, and the Internal Revenue Service. We will affirm.

**I.**

**A.**

In 1998, Congress passed the Internal Revenue Service Restructuring and Reform Act, Pub. L. No. 105-206, Title II, 112 Stat. 723 (1998) ("RRA"). The RRA states, in pertinent part, that "[i]t is the policy of Congress that paperless filing should be the preferred and most convenient means of filing Federal tax and information returns," and consequently that "it should be the goal of the Internal Revenue Service to have at least 80 percent of all such returns filed electronically by the

4

year 2007." Id. at § 2001(a).

Rather than ordering the IRS to develop its own internal electronic filing system in order to achieve this goal, Congress mandated that the IRS "should cooperate with and encourage the private sector by encouraging competition to increase electronic filing of such returns," id., and to "establish a plan to eliminate barriers, provide incentives, and use competitive market forces to increase electronic filing gradually over the next 10 years...." Id. at § 2001(b).

In response, the IRS initiated the Free File Program, pursuant to which it entered into an agreement in October 2002 ("2002 Agreement") with Free File Alliance, LLC ("FFA"), a consortium of companies in the electronic tax preparation and filing industry. The 2002 Agreement provided that the individual companies comprising FFA would offer free electronic filing ("e-filing") services to *at least* 60% of taxpayers, but it did not set an upper limit as to the percentage of taxpayers who could be offered free e-filing services.

The 2002 Agreement expired after three years, and in 2005 the IRS and FFA entered into a new agreement ("2005 Agreement") wherein they agreed to extend the provisions of the initial agreement, subject to certain amendments. For example, in contrast to the 2002 Agreement, the 2005 Agreement limited the percentage of taxpayers eligible to receive free e-filing services from FFA to the 70% of taxpaying population with the lowest adjusted gross income. In addition, the 2005 Agreement imposed a cap on the amount of free e-filing services available from any individual FFA member at 50% of all taxpayers. These provisions (referred to hereinafter as the "Ceiling

5

Provisions") were inserted by the IRS in order to ensure the continuing vitality of the Free File Program, which the IRS feared might otherwise cause many e-filing vendors to go out of business, thereby frustrating the program's ultimate goals. See Transcript of Oral Argument at 21-22, Byers v. Intuit, Inc., No. 09-1997 (3d Cir. Nov. 17, 2009).

**B.**

In November 2007, Stacie Byers initiated a putative class action on behalf of U.S. taxpayers against FFA and its members (collectively referred to hereinafter as the "FFA Members"), alleging that in charging fees in exchange for providing e-filing services, the FFA Members violated the Independent Offices Appropriations Act, 31 U.S.C. § 9701 ("IOAA").[1]  Byers

---

[1]The IOAA provides:

(a)  It is the sense of Congress that each service or thing of value provided by an agency (except a mixed ownership Government corporation) to a person (except a person on official business of the United States Government) is to be self-sustaining to the extent possible.

(b)  The head of each agency (except a mixed ownership Government corporation) may prescribe regulations establishing the charge for a service or thing of value provided by the agency.  Regulations prescribed by the heads of executive agencies are subject to policies

6

subsequently filed a first amended complaint that (1) added named plaintiff Deborah Seltzer, (2) added the IRS as a defendant with respect to the IOAA claim, and (3) added a claim under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, against the FFA Members, alleging that the 2005 Agreement constituted an illegal horizontal agreement amongst the FFA

---

prescribed by the President and shall be as uniform as practicable. Each charge shall be –

> (1) fair; and
> (2) based on –
>> (A) the costs to the Government
>> (B) the value of the service or thing to the recipient;
>> (C) public policy or interest served; and
>> (D) other relevant facts.

(c) This section does not affect a law of the United States –

> (1) prohibiting the determination and collection of charges and the disposition of those charges; and
> (2) prescribing bases for determining charges, but a charge may be redetermined under this section consistent with the prescribed bases.

7

Members to restrict output, which had the effect of causing plaintiffs and the members of the proposed class to pay "supracompetitive prices" for e-filing and related services.

On May 28, 2008, the District Court issued a memorandum and order dismissing the IOAA claim with prejudice pursuant to Fed. R. Civ. P. 12(b)(6),[2] and dismissing the Sherman Act claim with leave to amend. With respect to the IOAA claim, the District Court held that: (1) the IOAA does not apply to the FFA Members, since it only applies to a government agency or a private entity tasked with performing an agency's statutory duty; and (2) the IOAA does not provide a private right of action.[3]

---

[2] In its May 28, 2008 memorandum and order, the District Court dismissed the IOAA claim only with respect to FFA, but not with respect to the IRS, which had not yet completed its briefing. The IOAA claim against the IRS was subsequently dismissed in an order dated March 19, 2009.

[3] Byers argued before the District Court that her IOAA claim should in fact be construed as a claim seeking equitable remedies under the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"). The District Court rejected that argument, stating "I believe that Count I of the First Amended Complaint is more naturally read as asserting a claim under the IOAA, not the APA." App. at 77 n.66. Nonetheless, the District Court held that, to the extent that Byers did assert claim under the APA, "I conclude that [Byers] cannot sue the [FFA Members] under the APA, because they are not 'agencies' within the meaning of the APA." App. at 77.

8

With respect to the Sherman Act claim, the District Court held that although the Ceiling Provisions of the 2005 Agreement do have the effect of restricting competition between the FFA Members in violation of the Sherman Act, the FFA Members are entitled to conduct-based implied antitrust immunity and are therefore shielded from antitrust liability, since their anti-competitive behavior was required by the IRS pursuant to the 2005 Agreement.

In so holding, however, the District Court noted that it may be possible for Byers[4] to allege facts triggering the exception to conduct-based implied antitrust immunity articulated by the Supreme Court in Otter Tail Power Co. v. United States, 410 U.S. 366, 378-79 (1973), and thereby reinstate the viability of Byers' Sherman Act claim against the FFA Members. As such, the District Court dismissed Byers' Sherman Act claim with leave to amend.

Byers filed a second amended complaint, which contained all of the allegations present in her first amended complaint as well as several paragraphs intended to invoke the Otter Tail exception mentioned by the District Court. Nevertheless, on March 18, 2009, the District Court issued an order dismissing Byers' Sherman Act claim with prejudice pursuant to Rule 12(b)(6), holding that Byers had failed to assert sufficient allegations to invoke the Otter Tail exception, and

---

[4] For the sake of convenience, "Byers" will hereinafter be used to refer collectively to named plaintiff-appellants Stacie Byers and Deborah Seltzer, as well the putative class they purport to represent.

9

therefore that her Sherman Act claim fails due to the conduct-based implied antitrust immunity shielding the FFA Members. On the following day, March 19, 2009, the District Court issued an order dismissing Byers' IOAA claim against the IRS for the same reasons that it dismissed her IOAA claim against the FFA Members.

Byers timely appealed the District Court's dismissal of her IOAA claims against the FFA Members and the IRS, as well as the District Court's dismissal of her Sherman Act claim against the FFA Members.[5]

## II.

"Our standard of review of the District Court's dismissal under Rule 12(b)(6) is plenary." <u>Lora-Pena v. F.B.I.</u>, 529 F.3d 503, 505 (3d Cir. 2008). We "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Grammar v. John J. Kane Reg'l Ctrs.– Glen Hazel</u>, 570 F.3d 520, 523 (3d Cir. 2009). In addition,

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

---

[5] The District Court had jurisdiction pursuant to: 28 U.S.C. §§ 1331, 1332, 1337(a), 1346(a)(2), and 1361, and 15 U.S.C. §§ 1, 15, and 26. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will
not do. Factual allegations must be enough to
raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations,
quotation marks and alterations omitted).


## A. IOAA Claim

### (1) IOAA Claim against FFA Members

The District Court dismissed Byers' IOAA claim against
the FFA Members on two independent grounds, holding that: (1)
the IOAA does not apply to the FFA Members; and (2) there is
no express or implied private right of action under the IOAA.[6]
Because the District Court was correct in holding that the IOAA
does not apply to the FFA Members, we will affirm its dismissal
of the IOAA claim on that ground, and need not reach the issue
of whether a private right of action exists under the IOAA.

The IOAA provides, in pertinent part, that "[t]he head of
each agency . . . may prescribe regulations establishing the
charge for a service or thing of value provided by the **agency**."
31 U.S.C. §9701(b) (emphasis added). From the plain language

---

[6] As noted above, see supra n.3, to the extent that Byers'
IOAA claim against the FFA Members was asserted under the
APA, the District Court held that such a claim fails because the
APA does not apply to the FFA Members, who are not
"agencies" within the meaning of the APA.

11

of the statute, it is evident that the IOAA applies only to entities that are considered to be an "agency" under the statute. In Title 31 of the United States Code, the term "agency" is defined as "a department, agency, or instrumentality of the United States Government." 31 U.S.C. § 101. The FFA Members, who are wholly private entities, clearly do not fit within this definition, and thus the IOAA is facially inapposite.

However, Byers argues that the IOAA's reach extends not only to services provided directly by a government "agency," but also to private entities who provide services on behalf of a government agency pursuant to an agreement with that agency. Accordingly, Byers asserts that since the FFA Members provided e-filing services pursuant to agreements with the IRS—which is clearly an "agency" for IOAA purposes—the IOAA therefore applies to the fees that the FFA Members charged for e-filing services provided to taxpayers.

In support of her position, Byers relies primarily on Thomas v. Network Solutions, Inc., 176 F.3d 500 (D.C. Cir. 1999). In Thomas, the D.C. Circuit held that while the IOAA traditionally applies only to services provided directly by government agencies, "[g]overnment agencies cannot escape responsibility for failing to perform their statutory duties by hiring private parties to perform those duties," and thus, under certain circumstances, the IOAA's reach may be extended to encompass private entities as well. Id. at 510. Under Thomas, the IOAA applies to a private entity providing services pursuant to an agreement with a government agency, but only if: (1) the services provided by the private entity are services that the agency is statutorily required to provide; (2) the agency effectively controlled the private entity's provision of the

12

services at issue; or (3) the services provided by the private entity are "quintessential government service[s]." Id. at 510-11.

*Exception (1) – Services Provided by the Private Entity are Services that the Agency is Statutorily Required to Provide*

Byers argues that since the FFA Members were tasked with performing the IRS's statutory duty, this case falls under Thomas exception (1), and the IOAA therefore applies. We cannot accept Byers' argument since she erroneously conflates the statutory duty delegated to the IRS—i.e., **collecting** and **processing** tax returns—with the services provided by the FFA Members—i.e., **preparing** and **filing** the returns.

26 U.S.C. §§ 6011 and 6091 make clear that the filing of tax returns is the sole responsibility of the private individual or entity who is making the filing. Moreover, while §6011(f) provides that "[t]he Secretary is authorized to promote the benefits of and encourage the use of electronic tax administration programs," nowhere does it state that the IRS is obligated to assist taxpayers with the filing—electronic or otherwise—of their tax returns. Rather, the text merely provides that "a return...shall be made **to the Secretary** . . . ." Id. at §6091(b)(1)(A) (emphasis added). The Secretary—and by extension, the IRS—has no statutory duty with respect to the preparation or filing of tax returns. Rather, the IRS's obligations begin only *after* the tax return is actually "return[ed] . . . to the Secretary," id., which triggers the IRS's statutory mandate to review the return and assess the proper taxes as dictated by the Internal Revenue Code. Id. at §6201.

The FFA Members, in offering e-filing services to the

13

public, do not perform any of the tasks statutorily assigned to the IRS, but rather serve the very same private-sector functions as accountants (who aid with preparation of returns) and delivery services such as Federal Express (which aid with the filing of returns). As such, Byers has failed to state a viable IOAA claim under Thomas exception (1).

*Exception (2) – The Agency Effectively Controlled the Private Entity's Provision of the Services At Issue*

With respect to Thomas exception (2), Byers cannot sustain an argument that the IRS effectively *controlled* the conduct of the FFA Members, since Byers herself acknowledges that despite the FFA Members' agreement with the IRS, they were free to charge whatever they saw fit for their e-filing services. See Brief for Appellants at 32. Moreover, the plain language of the record indicates that the relationship between the IRS and the FFA Members was cooperative and bilateral in nature, with neither party exercising "effective control" over the other.[7]

_____

[7]For example, while Article V.A. of the 2002 Agreement states that "[t]he IRS will host and maintain the Web Page," Article V.C. of the same Agreement provides that "[t]axpayers will be able to use [FFA Members]' software to prepare and electronically file their own personal income returns using proprietary processes and systems which such Participants host and maintain." App. at 226. These two provisions illustrate the co-dependent nature of the Agreements, and belie any argument

14

*Exception (3) – The Services Provided by the Private Entity are Quintessential Government Services*

Nor does Thomas exception (3) support Byers' argument. The services offered by the FFA Members—i.e., the preparation and filing of tax returns—are activities that have always been the province of the private sector. Indeed, rather than providing a "quintessential government service," the FFA Members in fact provide a quintessentially *private-sector* service. Accord H.R. Rep. No. 107-575, p. 38 (2002) ("[T]he IRS stated that it did not intend to enter into the tax preparation software business; instead it intended to work in partnership with [private] industry to expand the electronic filing of tax returns . . . . The Committee strongly believes in the [private] industry-IRS partnership concept . . .").

\* \* \*

Since the IOAA is facially inapplicable to the FFA Members, and none of the Thomas exceptions apply, the District Court was correct in dismissing Byers' IOAA claim against the FFA Members pursuant to Rule 12(b)(6) on the ground that the IOAA does not apply to those entities.[8]

---

by Byers that, under the Agreements, the IRS effectively controlled the FFA Members.

[8]Since we will affirm the District Court's dismissal on this ground, we need not reach the questions of whether the service provided by the FFA Members constitutes a "service or thing of value" under the IOAA, or whether a private right of action exists under the IOAA or the APA.

15

## (2) IOAA claim against IRS

Byers' IOAA claim against the IRS is identical to Byers' claim asserted against the FFA Members. Since, as we note above, the e-filing services at issue in this case are quintessentially private-sector services, and the IRS is a quintessential government agency, the IOAA does not apply to this claim. See supra § II(A)(1). Moreover, neither are the Thomas exceptions, discussed in that section, applicable. The IRS did not exercise control—effective or otherwise—over the provision of those services, and accordingly, the IOAA claim against the IRS fails as a matter of law. The District Court did not err in dismissing the IOAA claim against the IRS pursuant to Fed. R. Civ. P. 12(b)(6).

## B. Sherman Act claim

The District Court dismissed Byers' Sherman Act claim against the FFA Members pursuant to Rule 12(b)(6) on the ground that Byers failed to assert sufficient allegations to establish that the FFA Members are not shielded from her Sherman Act claims under the doctrine of conduct-based implied antitrust immunity. Byers argues that the District Court erred in (1) holding that the FFA Members are entitled to conduct-based implied antitrust immunity, and (2) holding that Byers had failed to assert sufficient allegations in her second amended complaint to invoke the Otter Tail exception.

### (1) Conduct-Based Implied Antitrust Immunity

Byers submits that conduct-based implied antitrust immunity is accorded to private parties only when the private parties are: (1) acting at the direction of a government agency;

16

and (2) providing a "government service."  Br. for Appellants at 44-46.  Thus, argues Byers, if the District Court were indeed correct in holding that the IOAA does not apply to the FFA Members pursuant to Thomas because they were not providing a "quintessential government service," it must necessarily follow that the FFA Members are not entitled to implied antitrust immunity.  In essence, Byers complains that the FFA Members cannot "have their cake and eat it too"—if they lose on the IOAA issue, they must win on the antitrust immunity issue—and therefore cannot emerge victorious on both counts.

Byers' logic, however, is fatally flawed in that she fails to cite any authority for the proposition that implied antitrust immunity is available to private entities *only* when the service being provided is "governmental" in nature.  Indeed, as the FFA Members note, "[t]he cases in this area demonstrate that [in order to trigger implied antitrust immunity,] the specific *nature* of a private entity's conduct **need not be the provision of a 'governmental' function**, provided the conduct is *directed* by a federal agency, pursuant to a defined government program or policy."  Joint Opening Brief of Appellees Intuit, Inc., H&R Block Tax Digital Solutions, Inc., and Free File Alliance LLC at 46, ("Br. of FFA Members") (second and third emphases added).[9]  Such immunity is provided to a private party acting

_____

[9]See, e.g., Jes Properties, Inc. v. USA Equestrian, Inc., 458 F.3d 1224 (11th Cir. 2006) (antitrust immunity accorded to private entities who, pursuant to statutory authority, engaged in the non-governmental activity of regulating equestrian competitions); Name.Space, Inc. v. Network Solutions, Inc., 202

17

anti-competitively pursuant to an agreement with a government agency when: (1) the government agency is acting pursuant to a clearly defined policy or program; and (2) the private party is acting at the direction or consent of the government agency. Whether the particular activity in question is of a private or governmental nature is immaterial to the analysis.

It is clear that the IRS was statutorily authorized to enter into the 2002 and 2005 Agreements pursuant to the RRA. See RRA §2001(a) (mandating that the IRS "should cooperate with and encourage the private sector" to increase e-filing).    In addition, the Ceiling Provisions in the 2005 Agreement expressly directed the FFA Members to restrict the availability of free e-filing services under the Free File Program.[10]

---

F.3d 573 (2d Cir. 2000) (antitrust immunity accorded to private entity that was compelled by government agency to engage in the non-governmental service of overseeing distribution and management of internet "domain names"); Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285 (9th Cir. 1985) (implied antitrust immunity accorded to private entity that engaged in non-governmental service of selling specified merchandise to travelers at an airport); Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co., Inc., 632 F.2d 680 (7th Cir. 1980) (antitrust immunity accorded to distributor engaged in private activity of selling books and magazines to the Army and Air Force Exchange Service).

[10]As explained above, see supra § I(A), the Ceiling Provisions included in the 2005 Agreement provided that: (1) only the 70% of the taxpaying population with the lowest

18

Since both prongs (1) and (2) of the standard set forth above are satisfied, we conclude that the FFA Members are entitled to conduct-based implied antitrust immunity with respect to the anti-competitive action taken pursuant to the Ceiling Provisions of the 2005 Agreement.

*(2) Otter Tail Exception*

The Supreme Court in Otter Tail Power Co. v. United States, 410 U.S. 366 (1973), established an exception to the doctrine of implied antitrust immunity. Otter Tail held that even when the circumstances otherwise dictated that a private entity was entitled to implied antitrust immunity, such protection would not be accorded if: (1) the private entity had "insisted" on anti-competitive restrictions in its contract with a government agency; and (2) those restrictions "hindered" the government. See 410 U.S. at 379.

Since, as we hold, see supra §II(B)(1), the FFA Members are otherwise entitled to antitrust immunity, for Byers' Sherman Act claim against the FFA Members to survive, she must show that: (1) the FFA Members "insisted" upon the anti-competitive Ceiling Provisions present in the 2005 Agreement; and (2) that these restrictions "hindered" the goals of the IRS's Free File Program.

Byers failed to include such allegations in her first

---

adjusted gross income was eligible to receive free e-filing services from the FFA members; and (2) no individual FFA member was permitted to offer free e-filing services to more than 50% of all taxpayers.

19

amended complaint, leading the District Court to dismiss her Sherman Act claim with leave to amend, "since [Byers] may be able to amend [her Sherman Act claim] to allege facts that cast doubt on the [FFA Members]' conduct-based [antitrust] immunity." App. at 110.

In her second amended complaint, Byers attempted to invoke the Otter Tail exception by including the following paragraphs:

> The IRS agreed to the restrictions on free services only at the corporate defendants' **insistence**, and those restrictions were a **hindrance** to the IRS, especially the IRS's ability to fulfill the President's Management Agenda and the E Z Tax Filing Initiative to provide free services to all citizens and to promote electronic filing in an effort to meet its electronic filing goals set by the IRS Restructuring and Reform Act of 1998.
>
> [...]
>
> Thus the IRS agreed to the restrictions on free services only at the corporate defendants' **insistence**, and that those restrictions were a **hindrance** to the IRS. For example, in the year following implementation of the 2005 Agreement, participation in the free file program decreased by 23%.

App. at 492-93 (emphases added).

In support of these allegations, Byers appended a 2006

20

report issued by the Treasury Inspector General for Tax Administration ("TIGTA")[11] analyzing the 2005 Agreement between the IRS and the FFA Members, and also included pertinent portions of the TIGTA report in the body of her second amended complaint. See App. at 492-93. The contents of the appended TIGTA report support Byers' allegations that (1) the Ceiling Provisions were included the 2005 Agreement at the insistence of the FFA Members, and (2) the Ceiling Provisions had the effect of hindering the IRS's ability to fulfill the goal of the Free File Program to increase electronic filing.

However, while the TIGTA report itself buttresses Byers' Otter Tail allegations, the IRS's "Management Response" to the report,[12] which was included in the 2006 TIGTA report's appendix, see App. at 605-08, directly refutes the substance of those allegations. Although Byers did not append the IRS's Management Response to her second amended complaint, the District Court was nonetheless permitted to consider its contents in ruling on FFA Members' motion to dismiss, notwithstanding the general rule that a motion to dismiss for failure to state a claim is to be evaluated only on the contents of the pleadings, see, e.g., Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 257 (3d Cir. 2004), since: (1) Byers appended the TIGTA

---

[11] "The TIGTA is an independent, third-party auditor that reviews IRS programs and makes recommendations." App. at 17.

[12] By law, each TIGTA report includes a section containing the IRS's response to the contents of the report. See Inspector General Act of 1978 § 5(b), 5 U.S.C. app. 3 (2008).

report to her complaint and quoted at length from its contents, and the Management Response is a statutorily required part of the TIGTA report, see supra n.12; and (2) the FFA Members attached the Management Response to their motion to dismiss. See Seinfeld v. Becherer, 461 F.3d 365, 367 n.1 (3d Cir. 2006) (citing In re Donald J. Trump Casino Sec. Litig. – Taj Mahal Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)).

> As noted by the District Court:

> According to the management's response to the TIGTA report, the IRS' intent for the initiative was to "provid[e] a basic electronic filing option for a limited taxpayer segment filing simple returns," which suggests that the IRS had a goal of restricting the size of the population which the FFA would service and that restrictions were not added at [FFA Members]' "insistence." Additionally, the IRS stated that it believed that the program had "successfully fulfilled the intent of the initiative." This language strongly suggests that the restriction did not "hinder" IRS policy.

> [...]

> In short, according to the IRS statement in the management report, the Free File Program successfully met the IRS' intended objectives....

App. at 17-18.[13]

Byers argues that since the TIGTA report and the IRS's Management Response "present differences of opinion regarding whether or not changes to the 2005 Agreement actually hindered the initial and stated goals of the IRS," Br. for Appellants at 50, this "creates a factual dispute regarding whether the 2005 Agreement hindered IRS's stated goals," rendering the Sherman Act claim unripe for dismissal. Id.

We do not agree. By law, the views expressed in the TIGTA report do not reflect official IRS policy, see Inspector General Act of 1978 § 3(c), 5 U.S.C. app. 3 (2008), whereas the views expressed in the Management Response do reflect the official policy and perspective of the IRS. Id. at §5(b). As such, the contradiction between the TIGTA report and the Management Response does not create a factual dispute; rather, the IRS's official stance as articulated in the Management Response is, under the law, the final word as to whether the Ceiling Provisions were foisted upon the IRS at the insistence of the FFA Members, and whether they have proved a hindrance

---

[13] Indeed, the accuracy of the District Court's reading of the Management Response was verified at oral argument by the attorney representing the IRS, who stated to the Court that the "IRS did what it thought was best and made the policy choice to have [an] income restriction" in the 2005 Agreement in order to "maintain[] the viability of the [Free File] Alliance" and thereby fulfill Congress' directive regarding the encouragement of e-filing. Transcript of Oral Argument at 21-22, Byers v. Intuit, Inc., No. 09-1997 (3d Cir. Nov. 17, 2009).

to the IRS's institutional goals.

Accordingly, we conclude as a matter of law that—notwithstanding the opinions expressed in the 2006 TIGTA report—the Ceiling Provisions in the 2005 Agreement were not included at the insistence of the FFA Members, nor did they have the effect of hindering the goals of the Free File Program.

Given that the TIGTA report does not represent the official policy of the IRS, and therefore cannot be accepted as to "insistence" and "hindrance," all that remains in support of Byers' attempt to invoke the Otter Tail exception in her second amended complaint are her unadorned allegations regarding "insistence" and "hindrance." While as a general rule we must accept as true the allegations contained in a complaint attacked by a 12(b)(6) motion to dismiss, Grammar, 570 F.3d at 523, "a plaintiff's obligation to state the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (quotation marks and alterations omitted).

Here, Byers has incanted the "insistence" and "hindrance" elements necessary to invoke the Otter Tail exception, see App. at 492-93, but—aside from appending and quoting a wholly refuted source—has otherwise failed to bolster her allegations with sufficient supporting facts to satisfy the Twombly pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) ("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of the

24

proscribed conduct.") (quoting Twombly, 550 U.S. at 563 n.8) (alterations and quotation marks omitted).

Without the aid of the Otter Tail exception, Byers' Sherman Act claim against the FFA Members is foreclosed by the conduct-based implied antitrust immunity to which the FFA Members are otherwise entitled. See supra § II(B)(1). The District Court therefore did not err in dismissing the Sherman Act claim pursuant to 12(b)(6).

### (3) Noerr-Pennington

The FFA Members argue that even if they are not shielded from Byers' Sherman Act claim on the basis of implied antitrust immunity, they are still protected under the Noerr-Pennington doctrine, which immunizes private parties against antitrust liability based on the petitioning of government entities, even if there is an improperly anti-competitive motive or purpose behind the petition. We have cogently summarized the Noerr-Pennington doctrine as follows:

> Under the Noerr- Pennington doctrine, a party who petitions the government for redress generally is immune from antitrust liability. Petitioning is immune from liability even if there is an improper purpose or motive. [...] The immunity reaches not only to petitioning the legislative and executive branches of government, but the right to petition extends to all departments of the Government, including the judiciary.
>
> [...]
>
> A petitioner may be immune from the antitrust

25

injuries which result from the petitioning itself. Also, [...] parties are immune from liability arising from the antitrust injuries caused by government action which results from the petitioning. Therefore, if its conduct constitutes valid petitioning, the petitioner is immune from antitrust liability whether or not the injuries are caused by the act of petitioning or are caused by government action which results from the petitioning.

A.D. Bedell Wholesale Co., Inc. v. Philip Morris Inc., 263 F.3d 239, 250-51 (3d Cir. 2001).

The District Court held that while "[t]he negotiations that preceded the 2005 Agreement between [the FFA Members] and the IRS may constitute valid petitioning that ultimately requires me to dismiss [the Sherman Act claim] under the Noerr-Pennington doctrine . . . I cannot consider evidence of those negotiations at this time because such evidence is neither mentioned in the pleadings nor [is] a matter of [public] record." App. at 98.

We have explained the contours of a Noerr-Pennington claim so that the FFA Members can be assured that we have given recognition to their Noerr-Pennington argument. However, given that we will affirm the District Court's dismissal of Byers' Sherman Act claim, see supra § III(B)(1)-(2), we find no need to dwell on or further address the FFA Members' Noerr-Pennington argument, which, even if we were to accept it, would in any event lead to the same result that we have already reached on other grounds.

26

**III.**

The District Court did not err in dismissing Byers' IOAA claims against the IRS and the FFA Members pursuant to 12(b)(6), nor did it err in dismissing Byers' Sherman Act claim against the FFA Members pursuant to 12(b)(6). Accordingly, we will affirm the judgments of the District Court dated May 28, 2008; March 18, 2009; and March 19, 2009.