Michael J. TAORMINA, Administrator of the Estate of Marie D. Taormina, Deceased, Plaintiff,

v.

SUBURBAN WOODS NURSING HOMES, LLC d/b/a Suburban Woods Health & Rehab, et al., Defendants.

Civil Action No. 10–CV–3676.

United States District Court, E.D. Pennsylvania.

Feb. 14, 2011.

Robert E. Slota, Jr., Hamburg Rubin Mullin Maxwell & Lupin, Lansdale, PA, for Plaintiff.

David M. McGeady, William J. Mundy, Burns White Hickton LLC, West Conshohocken, PA, William Lance Banton, Jr., Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Defendants.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Plaintiff Michael J. Taormina ("Taormina"), administrator of the estate of Marie

D. Taormina, deceased, filed suit against defendants Suburban Woods Nursing Homes, LLC d/b/a Suburban Woods Health & Rehab ("SWNH"), Northern Health Facilities, Inc. d/b/a Suburban Woods Health & Rehab ("Northern Health"), Extendicare Health Services, Inc. d/b/a Suburban Woods Health & Rehab ("Extendicare"), General Health Care Resources, Inc. ("General Health"), and Cathleen M. Schriver, M.S. ("Schriver"). Taormina raised two claims under 42 U.S.C. § 1983 (Counts I & II) against SWNH, Northern Health, and Extendicare, and several tort causes of action arising under state law against all five defendants. Northern Health and Extendicare now move to dismiss Taormina's § 1983 claims, and for the court to decline supplemental jurisdiction over Taormina's state law claims. For the reasons that follow, I will **GRANT** in part and **DENY** in part Northern Health and Extendicare's Motion to Dismiss Taormina's Complaint.

### I. BACKGROUND [1]

Taormina brings suit as the administrator of the estate of Marie D. Taormina ("Marie"), Taormina's mother, now deceased. On July 23, 2008, Marie was taken to Suburban Woods Health and Rehabilitation Center ("Suburban Woods"). Marie, a Medicare patient, was admitted for nursing home care, medical treatment, and rehabilitation after being diagnosed with syncope, urinary tract infection, muscle weakness, and ambulatory dysfunction. Suburban Woods was collectively operated by Defendants SWNH, Northern Health, and Extendicare (collectively, the "Suburban Woods Defendants"). The Suburban Woods Defendants were private entities and operated Suburban Woods without active direction from any government entity. Suburban Woods was, however, subject to state and federal regulations concerning patient care, and received state and federal funding. General Health, a private healthcare contracting service, provided Suburban Woods with several contract employees, including Schriver, a speech and language pathologist.

On July 29, 2008, Suburban Woods employees noticed that Marie was experiencing difficulty swallowing her medication. Although some Suburban Woods employees requested an evaluation by a speech and swallowing specialist, no physician was ultimately contacted. On July 30, 2008, Marie again experienced difficulty swallowing her medication multiple times during the day. In response to Marie's problems, Schriver visited her at on the same day at approximately 1:00 P.M. Schriver attempted to evaluate Marie's swallowing capabilities by asking her to eat pieces of fruit. Upon eating the fruit, Marie choked and stopped breathing.

Although a Suburban Woods employee performed the heimlich maneuver on Marie, her throat remained blocked and she continued to choke. An emergency response team attempted to perform cardiopulmonary resuscitation, and an emergency laryngoscopy on Marie. Neither of these efforts were successful, and Marie died before reaching the hospital.

Following Marie's death, several pieces of fruit were found in her airway. The Montgomery County Coroner performed an autopsy on the same date and confirmed that the cause of Marie's death was the "aspiration of food."

### II. MOTION TO DISMISS STANDARD

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the com-

---

**1.** Unless otherwise noted, all facts are taken from the Complaint and are considered in the light most favorable to Taormina, the nonmovant.

plaint ... may be entitled to relief." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir.2010) (quoting *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir.2010)). The Complaint must allege facts sufficient to "raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements...." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Rather, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.2006). This "assumption of truth" is "inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949.

A court deciding a Rule 12(b)(6) motion generally may consider a "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (internal quotations and emphasis omitted). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

Northern Health and Extendicare argue that Taormina's § 1983 claims must be dismissed for insufficiently alleging: (1) state action; (2) that Northern Health and Extendicare acted with deliberate indifference to Taormina's rights; and (3) that Suburban Woods had a custom and policy of violating civil rights. Because I conclude that Taormina has failed to sufficiently allege state action, I do not reach the other issues.

Section 1983 "is a vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Grammer v. John J. Kane Reg'l Ctrs.—Glen Hazel*, 570 F.3d 520, 525 (3d Cir.2009) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4-6, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980)). Taormina brings suit under § 1983 for violations of the Federal Nursing Homes Reform Amendments ("FNHRA"), Pub. L. No. 100–203, §§ 4201–4218, 1987 U.S.C.C.A.N. (101 Stat.) 1330, 1330–160 to 1330–221, codified at 42 U.S.C. §§ 1395i-3, 1396r. The Third Circuit has held that "Congress intended to create individual rights in drafting and adopting" the FNHRA, and that Medicaid recipients like Marie Taormina "fall[ ] squarely within the zone of interest these provisions are meant to protect." *Grammer*, 570 F.3d at 532. As a result, the Third Circuit held that "the FNHRA give[s] Medicaid recipients ... rights whose violation can be remedied under § 1983." *Id.* at 525.

One of the requirements of a § 1983 claim is that "the defendant acted under color of state law, in other words, that there was state action." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175–76 (3d Cir.2010). Taormina argues that the state action requirement is satisfied here because Suburban Woods,

and thereby its operators the Suburban Woods Defendants: (1) received funding from the Pennsylvania state government; (2) was subject to Pennsylvania's licensing regime, including regular inspections by Pennsylvania's Department of Health; and (3) was required to comply with various Pennsylvania laws governing patient care. Northern Health and Extendicare argue that the mere fact that Suburban Woods was licensed, regulated, and partially funded by the state is not sufficient to satisfy the state action requirement.

"The Supreme Court made clear early in its state action jurisprudence that state licensing was not enough to make a private entity a state actor, *see Moose Lodge v. Irvis,* 407 U.S. 163, 176, 92 S.Ct. 1965, 32 L.E.2d 627 (1972), and the Court has repeatedly opined that regulation—even detailed regulation, as we have here—does not equate to state action, *see, e.g., Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.E.2d 477 (1974) (a heavily regulated utility company was not a state actor)." *Crissman v. Dover Downs Entm't Inc.,* 289 F.3d 231, 243 (3d Cir. 2002). "The Supreme Court has stated with equal force that the flow of funds does not implicate the state in private activity." *Id.*

■■■■ Even in combination, licensing, regulation, and state funding do not establish state action where "the combination brings no greater result...." *Id.* at 244–45.[2] Rather, state action requires a "close nexus" between the state and the conduct at issue. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (citing *Jackson,* 419 U.S. at 358–59, 95 S.Ct. 449); *Leshko v. Servis,* 423 F.3d 337, 341 (3d Cir.2005) (holding that the plaintiff "states no claim of state action on the basis of state regulation and funding" where the plaintiff failed to allege "that Pennsylvania forced or encouraged, or jointly participated in, the [conduct complained of]."). A "close nexus" exists where the government "has exercised coercive power or has provided such significant encouragement, either over or covert, that the choice must in law be deemed to be that of the state. Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives...." *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777 (citations omitted).[3]

■■■■ Taormina argues that at the Motion to Dismiss stage, he has alleged facts sufficient to show that the fact that there was a "close nexus" between Pennsylvania's licensing, regulation, and funding of private nursing home facilities, sufficient to establish state action. The facts he alleges, however, are analogous to those in *Blum,* where the Supreme Court held that no close nexus existed between a private nursing home and the state of New York. *Kia P. v. McIntyre,* 235 F.3d 749, 756 (2d Cir.2000) (citing *Blum* in holding that where a hospital was "owned and operated

---

2. The Third Circuit has reaffirmed this general principle in a recent unpublished opinion. *See Schneller ex rel. Schneller v. Crozer Chester Med. Center,* 387 Fed.Appx. 289 (3d Cir.2010) ("In his brief on appeal, Schneller ... continues to press his argument that the private hospital appellees are state actors because they receive public monies and tax benefits, they are subject to state and federal regulation, and their actions are 'so entwined with governmental policies ... as to become state action [ ]'.... This argument has been consid-

ered and repeatedly rejected by the Supreme Court in similar cases.").

3. Private conduct may also constitute state action where a private actor "has been delegated a public function by the State...." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (citing *West v. Atkins,* 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). This argument has not been raised here.

by a private corporation; it is not a state or municipal facility.... [T]he Hospital was therefore not a state actor. Whatever misdeeds the Hospital defendants may have committed in providing that care ... they are not redressable under § 1983."); *see also White v. St. Joseph's Hosp.*, 369 Fed.Appx. 225, 226 (2d Cir.2010) (citing *Blum* for the proposition that "private actors and institutions, such as ... nursing home[s] ... are generally not proper § 1983 defendants because they do not act under color of state law.... [T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action.");. Taormina has not alleged that Pennsylvania has exercised coercive power, or overtly encouraged Suburban Woods to provide insufficient care. Rather, Taormina relies on the fact that Pennsylvania's incentive system encourages nursing homes to manage costs, and that Pennsylvania decreased its funding to private nursing homes such as Suburban Woods. These actions, Taormina alleges, encouraged nursing homes to provide less-than-sufficient care, and as a result the decision to provide substandard care can be attributed to the state.

Such reasoning would eviscerate the Supreme Court's emphatic statement that "[t]he Government may subsidize private entities without assuming constitutional responsibility for their actions." *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987). Any increase or decrease in taxing or spending necessarily affects private behavior. To hold that such an effect necessarily creates a "close nexus" would be to hold that nearly any action in an industry that receives government funding constitutes state action, in contravention of Supreme Court authority. As the Court stated in *Blum*, "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the

state responsible for those initiatives under the terms of the Fourteenth Amendment." *Blum*, 457 U.S. at 1005, 102 S.Ct. 2777; *see also S.F. Arts*, 483 U.S. at 546, 107 S.Ct. 2971 (holding that a private actors conduct was not state action just because the government failed to supervise that party's conduct). That is precisely what happened here: Pennsylvania's laws incentivized nursing homes to control their staff costs, Suburban Woods controlled its cost by allegedly decreasing standards for patient care, and Pennsylvania allegedly acquiesced in that decision.

As the Second Circuit has recognized, *Blum* dealt with almost identical facts regarding the incentives arising out of state regulation:

> Thus, the gantlet of state regulation in [*Blum* ] was expressly described by the Court as encouraging nursing homes to reduce costs—or, to borrow language from *Coleman* [*v. Wagner College*, 429 F.2d 1120 (2d Cir.1970) ], "to adopt a particular stance" toward cost containment—and to that end imposed detailed recordkeeping and reporting requirements. Nevertheless, the Court held that the transfer decisions of the nursing homes did not constitute state action.... The court also noted that "[a]djustments in benefit levels in response to [the private actor's decisions do] not constitute approval or enforcement" by the state.

*Albert v. Carovano*, 851 F.2d 561, 570–71 (2d Cir.1988). As in *Blum*, Pennsylvania merely "encourag[ed] nursing homes to reduce costs...." *Id.* at 570. However, the "ultimate power to [set the level of care] would, as in [*Blum* ], rest with the private party." *Id.* at 571. Taormina does not allege that Pennsylvania coerced or directed Suburban Woods to provide substandard care. Rather Taormina alleges that the government passively incentivized Sub-

urban Woods to control its costs, which Suburban Woods accomplished by providing substandard care. As in *Blum,* this passive incentivization is not such "significant encouragement [on the part of the state] that the choice must in law be deemed to be that of the state." *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777.

Taormina suggests that the Third Circuit's Opinion in *Grammer* changes the state action inquiry, and somehow turns the actions by a private nursing home into action by the state. *Grammer,* however, only considered whether a plaintiff receiving medicaid could enforce rights created by the FNHRA through § 1983. As other courts have recognized, *Grammer* did not speak to the issue of state action because the defendant nursing home there was operated by Allegheny County, and there was no question that it was acting under color of state law. *See Baum v. N. Dutchess Hosp.,* 764 F.Supp.2d 410, 428–29, 2011 WL 240196, at *12 (N.D.N.Y. Jan. 24, 2011) ("The *Grammer* case was not against any private concern but rather a government owned and operated nursing home. 570 F.3d at 522 (noting that the defendant was owned an operated by Allegheny County). When government assumes the traditional duties of a private company and provides those services, those actions are indeed under the color of state law."); *Soto v. Lene,* 2011 WL 147679, at *2 (E.D.N.Y. Jan.18, 2011) ("In fact, the two cases that plaintiff cites to in his complaint are examples of plaintiffs suing state- or county-owned facilities under § 1983 for violations of § 1396r. See *Grammar [sic] v. John J. Kane Reg'l Ctrs.—Glen Hazel,* 570 F.3d 520, 522 (3d Cir.2009); *Joseph S. v. Hogan,* 561 F.Supp.2d at 286. However, plaintiff cannot state a claim under § 1983 because, as discussed above, none of the named defendants are state actors.").

Reading *Grammer* as Taormina suggests would conflate the plaintiff-centered "right of action" inquiry with the defendant-centered "state action" inquiry, and would essentially vitiate the state action requirement in highly regulated industries. Further, such a reading contravenes the Supreme Court precedent in *Blum,* and the Third Circuit's own state action jurisprudence. *See Crissman,* 289 F.3d at 244–45; *Schneller,* 387 Fed.Appx. at 293–94. The FNHRA does not "transmute a traditionally private act by a private actor into a traditional public function, unless government itself gets directly involved in the business of rendering such services as found in *Grammer.*" *Baum,* 764 F.Supp.2d at 433, 2011 WL 240196, at *15. Taormina's Complaint cannot be read to infer that Northern Health and Extendicare were acting under color of state law, and thus Taormina's § 1983 claims fail against those defendants.

## IV. CONCLUSION

For the foregoing reasons I will **GRANT** Defendants Northern Health and Extendicare's Motion to Dismiss Taormina's § 1983 claims against Northern Health and Extendicare, and I will **DENY** Defendants' Motion as to Taormina's remaining claims.

### *ORDER*

**AND NOW,** this 15th day of February 2011, it is **ORDERED** that Defendants Northern Health Facilities, Inc. and Extendicare Health Services, Inc.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 9) is **GRANTED** in part and **DENIED** in part as follows:

- Defendants' Motion is **GRANTED** as to Taormina's § 1983 claims (Counts I & II) against Defendants Northern Health and Extendicare.

● Defendants' Motion is **DENIED** as to Taormina's remaining claims.