NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
————————

No. 11-4033
————————

MICHAEL OSEI,

Appellant

v.

TEMPLE UNIVERSITY,
of the Commonwealth System of Higher Education;
DR. MIA K. LUEHRMANN,
Associate Dean of Undergraduate Studies
ANDREA C. SEISS, Senior Associate Dean of Students;
DR. ROBERT J. LEVIS, Department of Chemistry, Chairman  Professor;
DR. GRANT KROW,  Professor of Chemistry;
DR. ANNE WEAVER HART, Individually and in her Official
Capacity as President of Temple University;
BRIAN C. FOLEY, Individually and in his Official Capacity as Vice Chair,
University Disciplinary Committee, Temple University;
DR. KEITH GUMERY, Individually and in his Official Capacity as Vice Chair,
University Disciplinary Committee, Temple University
————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-10-cv-02042)
District Judge: Honorable C. Darnell Jones, II
————————

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2013

Before:  RENDELL, AMBRO, and VANASKIE, Circuit Judges

(Opinion filed March 11, 2013)

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

Appellant Michael Osei appeals the District Court's order granting the Defendants' motion to dismiss his procedural due process claim. We affirm.

I.

Osei was enrolled in a bachelor's degree program in healthcare management at Defendant Temple University of the Commonwealth System of Higher Education ("Temple").[1] Because Osei is originally from the Republic of Ghana, his first language is Ghana Twi of the Akan (Asante) tribe.

After receiving an allegedly unfair grade in Defendant Dr. Grant Krow's organic chemistry class, Osei sent Dr. Krow a series of e-mails in December 2009. His second e-mail to Dr. Krow explained that an unfair grade would result in "a curse against [Dr. Krow's] life and family forever." In the third e-mail, Osei explained: "I just want justice on you physically and spiritually. Your game is over! Mine begins. You played with the wrong person this time. Cooperate to prevent things from escalating." A follow up email warned: "Mar[k] my words: The year 2010 will not start well for you."

On January 12, 2010, the University Disciplinary Committee formally informed Osei that he had been charged with violating Temple's Student Code of Conduct for sending "threatening e-mails to Dr. Grant Krow in reference to receiving a poor grade."

_____

[1] These facts are as alleged in Osei's Amended Complaint.

It quoted a portion of Osei's second email to Dr. Krow and referred to a provision of the Code that prohibits "[a]ny act or threat of intimidation or physical violence toward another person including . . . threatened assault or battery." A January 28 "Notice of Hearing" stated that a hearing on the alleged Code violation was scheduled for February 3 and that Dr. Krow would act as a witness, among others. The day before the hearing Osei was informed that Dr. Mia Luehrmann (Associate Dean of Undergraduate Studies for the College of Science and Technology) would also be called as a witness. Less than twenty minutes prior to the hearing, Osei was told that his other e-mails to Dr. Krow would also be presented at the hearing.

Osei attended the February 3 hearing with an attorney advisor who was not allowed to participate. Dr. Krow did not ultimately attend, but others testified that Dr. Krow had "felt threatened," "was worried about what to do," and was "a little spooked" by Osei's emails. The witnesses also referred to issues Osei had with another faculty member. Osei had a chance to speak at the hearing. He apologized, offered letters of good character, and explained that his English was imperfect.

Osei was determined to have violated the Code of Conduct. At the sanctions phase of the hearing, Dr. Luehrmann testified to "a pattern of intimidation" by Osei that included several other faculty members. Osei was suspended until August 15, 2010, required to attend anger management classes, and put on probation until graduation. Osei appealed, and the Appellate Board unanimously affirmed. Having exhausted his claims at the University level, Osei filed suit in the Eastern District of Pennsylvania, alleging, among other claims, a denial of procedural due process.

3

After allowing Osei to file an Amended Complaint, the District Court dismissed his federal claims and declined to exercise supplemental jurisdiction over his remaining state claims. *Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609 (E.D. Pa. Sept. 30, 2011).

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010). Although we accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009), "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, it must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

## III.

Procedural due process requires school authorities to provide students facing temporary suspensions with "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). This includes "notice of the charges," "an explanation of the evidence" against the student, and "an opportunity to present his side of the story." *Id. Goss* specifically applied to suspensions of ten days or fewer. *Id.* Nonetheless, what is required of due

4

process is generally a function of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used" and "the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Doe ex rel. Doe v. Todd Cnty. Sch. Dist.*, 625 F.3d 459, 462–63 (8th Cir. 2010) (noting that federal appellate courts have applied *Mathews* to determine what process is due beyond a ten-day suspension).

Pursuant to these factors, we agree with the District Court that Osei was afforded procedural due process on the face of his Amended Complaint. Although he was only given one day's notice that Dr. Luehrmann was scheduled to testify at his hearing, this was sufficient notice given the context, and there is no allegation that Osei objected at the time of the hearing or sought a continuance. Similarly, because the Notice of Disciplinary Action specifically referenced Osei's threatening e-mails, there was no lack of notice that all his e-mail correspondence with Dr. Krow might be considered. Finally, in light of these e-mails, we are not persuaded by Osei's argument that he was deprived of the opportunity to confront Dr. Krow. To the extent Osei was charged with threats and intimidation, the emails spoke for themselves and he was given ample opportunity to clarify what he meant to communicate.

We are also not persuaded that references by witnesses to prior incidents of alleged intimidation support a claim for a procedural due process violation. *Goss*

5

requires that a student receive notice of the charges and an opportunity to explain his side of the story. There is no allegation that Osei was denied the opportunity to challenge the witnesses' testimony or was unable to explain his side of any allegations against him. Finally, to any extent hearsay was permitted at Osei's hearing, the school did not have to abide by the same evidentiary standards as one would in a courtroom. *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 926 (6th Cir. 1988) (citation omitted) (addressing long-term suspensions under *Mathews* and endorsing the view that school disciplinary hearings need not adhere to common law rules of evidence).

Thus, even accepting the allegations in Osei's Amended Complaint as true, he has not pled sufficient facts to show a plausible procedural due process violation. The District Court correctly dismissed this claim, and we affirm.